Judge Terry J. HATTER, Jr., Judge George Arceneaux, Jr., Judge Peter H. Beer, Chief Judge Juan G. Burciaga, Judge A.J. McNamara, Judge Harry Pregerson, Raul A. Ramirez and Chief Judge Thomas A. Wiseman, Jr., Plaintiffs–Appellants,

v.

The UNITED STATES, Defendant–Appellee.

No. 91–5039.

United States Court of Appeals, Federal Circuit.

Jan. 16, 1992.

Steven S. Rosenthal, Morrison & Foerster, Washington, D.C., argued, for plaintiffs-appellants. With him on the brief were W. Stephen Smith and Ellen E. Deason.

Terrence S. Hartman, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Claire Hoffman, Dept. of Health and Human Services.

Before ARCHER, PLAGER and RADER, Circuit Judges.

RADER, Circuit Judge.

Terry J. Hatter, Jr., et al., life-tenured federal judges, appeal the dismissal of their complaint by the United States Claims Court. *Hatter v. United States*, 21 Cl.Ct. 786 (1990). The judges allege that imposition of social security taxes diminished their compensation in violation of the United States Constitution. The Claims Court dismissed their complaint for lack of jurisdiction. Because the Tucker Act gives the Claims Court jurisdiction over claims of salary diminution under Article III of the Constitution, this court reverses and remands.

## BACKGROUND

In 1983, Congress passed the Social Security Amendments of 1983. *See* 42 U.S.C. § 410(a)(5)(C)–(G) (1988). This Act extended social security coverage to many Government employees, including federal court of appeals and district court judges.* Previously, federal judges were exempt from paying social security taxes.

On January 1, 1984, the Social Security Amendments imposed Federal Insurance Contributions Act ("FICA") taxes on federal judges. From 1984 to 1989, plaintiffs each paid the following amounts in FICA taxes:

| YEAR | TAX |
| --- | --- |
| 1984 | $2,532.60 |
| 1985 | $2,791.80 |
| 1986 | $3,003.00 |
| 1987 | $3,131.70 |
| 1988 | $3,379.50 |
| 1989 | $3,604.80 |

On December 29, 1989, plaintiffs filed a complaint in the Claims Court. In count I, plaintiffs contend that the 1983 Amendments "unlawfully diminished and continues to diminish plaintiffs' compensation in violation of Article III, Section 1, of the Constitution of the United States." Under this count, plaintiffs sought monetary damages to compensate for their diminished wages. Count II claims that plaintiffs have an employment contract with the Government which protects them against diminishment of their compensation. Again, plaintiffs seek damages for breach of contract.

The Government moved to dismiss the complaint for lack of jurisdiction because plaintiffs did not file an administrative claim for a tax refund. *See* 26 U.S.C. § 7422(a) (1988). The Claims Court granted the Government's motion. Plaintiffs appealed.

## DISCUSSION

This court must decide whether appellants have stated a case within the Claims Court's jurisdiction under 28 U.S.C. § 1491 (1988) (Tucker Act). Under the Tucker Act, the United States has waived sovereign immunity for suits in the Claims Court:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act alone, however, does not create a substantive right to collect money

* No member of this panel was an Article III judge in 1984. Therefore, no panel member suffered an alleged diminution in salary when the 1983 Amendments took effect.

damages from the United States. *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Eastport S.S. v. United States*, 372 F.2d 1002, 1007–09, 178 Ct.Cl. 599 (1967). Rather, the Act empowers the Claims Court to award damages for the violation of substantive rights embodied in the Constitution, federal statutes, executive regulations, or federal contracts. *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983).

■ Thus, to invoke Tucker Act jurisdiction, claimants must show that their claim arises under an independent source of federal law. Moreover, the federal law or contract, fairly interpreted, must provide a damages remedy for violations. *Id.* In sum, appellants must show their claim arises from a federal constitutional, statutory, regulatory, or contractual provision that provides damages for its breach.

Appellants base their Tucker Act claim on Article III, Section 1, of the United States Constitution:

The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

U.S. Const. art. III, § 1. Appellants thus invoke the Constitution as an independent source of federal law providing for the payment of money.

This provision of the Constitution, fairly interpreted, mandates the payment of money in the event of a prohibited compensation diminution. This provision states, in mandatory and unconditional terms, that judges' salaries "shall not be diminished during their Continuance in Office." This language presupposes damages as the remedy for a governmental act violating the compensation clause. Only a timely restoration of lost compensation would prevent violation of the Constitution's prohibition against diminution of judicial salaries.

Thus, the Constitution mandates that federal judges must receive, "during their Continuance in Office," compensation for their services which may not be less than their compensation upon assuming office. In the event of a violation of this clause, the Constitution itself provides a remedy—compensation. In sum, by forbidding any diminution of judicial compensation, the Constitution itself requires repayment of prohibited reductions in compensation to Article III judicial officers.

The history of the compensation clause supports this court's reading that a violation of the clause mandates repayment or compensatory damages. According to James Madison's notes, the delegates to the Philadelphia Convention discussed the compensation clause on July 18, 1787. 2 Max Farrand, *The Records of the Federal Convention of 1787*, 44–45 (1911). Gouverneur Morris proposed wording the compensation clause to prevent "any improper dependence in the Judges." *Id.* James Madison, in response, shared Morris's view that the Constitution should reduce any dependence by the judicial branch on the other branches for compensation. *Id.* at 45. Alexander Hamilton, too, explained the compensation clause:

Next to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support.... In the general course of human nature, *a power over a man's subsistence amounts to a power over his will.* And we can never hope to see realized in practice the complete separation of the judicial from the legislative power, in any system which leaves the former dependent for pecuniary resources on the occasional grants of the latter.

*The Federalist No. 79*, at 472 (Alexander Hamilton) (emphasis in original) (Clinton Rossiter ed., 1961). These framers of the Constitution shared a common vision of the undiminishable compensation clause.

These observations by the framers of the compensation clause underscore its importance to the preservation of judicial independence in a system of separated powers. These comments also suggest that judicial officers deprived of full compensation need not rely on legislative or executive action for a remedy. To require further legisla-

tive or executive actions to enforce the compensation clause would frustrate Article III's purpose of judicial independence. The purpose of Article III, § 1, as well as its language, embraces a self-executing compensatory remedy.

The Supreme Court has also considered whether an alleged violation of the compensation clause provides Tucker Act jurisdiction. *United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980). In *Will,* several federal judges sought review of four statutes purporting to stop or reduce cost-of-living increases for judges. The Court concluded that two of the four statutes purported to roll back judicial salary increases already in effect. These statutes violated Article III, § 1. *Id.* at 226, 230, 101 S.Ct. at 486, 488. Any legislative attempt to rescind those effective salary increases would diminish judges' compensation. The Court upheld the other two statutes because they affected salary increases not yet in effect. *Id.* at 229, 101 S.Ct. at 487. Therefore, those two statutes did not diminish judicial salaries. The case was remanded to the trial court to determine money damages. *Id.* at 230–31, 101 S.Ct. at 488.

To reach these substantive results, the Court necessarily examined the jurisdiction of the trial courts to enforce the compensation clause. The Court stated that both the Court of Claims, the predecessor to the Claims Court's trial jurisdiction, and district courts had jurisdiction to determine whether the four statutes violated Article III, § 1. The Court stated:

> [T]here is no doubt whatever as to this Court's jurisdiction under 28 U.S.C. § 1252 or that of the District Court under 28 U.S.C. § 1346(a)(2) (1976 ed., Supp. III).

*Id.* at 210–11, 101 S.Ct. at 478 (footnote omitted). "Jurisdiction being clear," *id.* at 211, 101 S.Ct. at 479, the Court proceeded to the next inquiry.

The Court felt jurisdiction was "clear" based on 28 U.S.C. § 1346(a)(2). In a footnote, the Court explained:

> This provision confers on the district courts and the Court of Claims concur-

rent jurisdiction over actions against the United States based on the Constitution when the amount in controversy does not exceed $10,000.

*Id.* at 211, n. 10, 101 S.Ct. at 478, n. 10. Section 1346(a)(2) of title 28, also known as the Little Tucker Act, mirrors the Tucker Act. It provides district courts concurrent jurisdiction with the Claims Court to handle claims against the United States, "not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress." The Supreme Court found jurisdiction in the district court for the *Will* plaintiffs under the Little Tucker Act.

The only jurisdictional difference between the appellants in *Will* and the plaintiffs in this case is the amount in controversy. Plaintiffs in this case seek more than $10,000 in damages. The Supreme Court found jurisdiction under the Little Tucker Act in the district court for the *Will* plaintiffs. The Tucker Act provides jurisdiction in the Claims Court for the plaintiffs in this case.

The Claims Court erred by recharacterizing plaintiffs' action as solely a request for a tax refund. Plaintiffs' complaint sought damages for violation of the compensation clause. Nonetheless, the Claims Court read their claim as a tax refund suit. The Claims Court erred by imposing a single legal theory on the plaintiffs' complaint.

■ The Federal Rules of Civil Procedure permit parties to pursue their claim on any viable legal theory. Fed.R.Civ.P. 8(e)(2). In this case, plaintiffs could have pursued a tax refund. If they had, as the Claims Court noted, title 26 would have required a prior administrative claim. *See,* 26 U.S.C. § 7422(a). Plaintiffs, however, did not pursue a tax refund. Instead they sought damages for violation of Article III, § 1—an action which is within the Tucker Act jurisdiction of the Claims Court.

By requiring prior filing of an administrative claim with the Internal Revenue Service for a compensation clause violation, the Claims Court overlooked the language and purpose of Article III, § 1. Conditioning redress of an alleged compensation

clause breach on executive branch actions would frustrate the purpose of Article III, § 1. The Constitution provides a compensatory remedy without need for reliance on other branches.

The Claims Court based its recharacterization of plaintiffs' action on two cases, *O'Malley v. Woodrough*, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289 (1939), and *King v. United States*, 390 F.2d 894, 182 Ct.Cl. 631 (1968), *rev'd on other grounds*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). In *O'Malley*, the plaintiffs challenged the validity of federal income taxes because withholding revenues allegedly diminished federal judges' salaries. The Court determined that Article III did not bar Congress from imposing a non-discriminatory income tax on federal judges. *O'Malley*, 307 U.S. at 282, 59 S.Ct. at 840. *O'Malley*, however, does not affect the jurisdiction of the Claims Court. Contrary to the Claims Court's statement, *Hatter*, 21 Cl.Ct. at 789, the Supreme Court did not recast *O'Malley*'s plaintiffs' diminution claims as tax refund actions. The *O'Malley* plaintiffs elected to sue the Collector of Internal Revenue for a refund, rather than seeking damages. The *O'Malley* plaintiffs' election in the 1930s, however, hardly binds the *Hatter* plaintiffs in the 1990s. As noted earlier, the Tucker Act provides plaintiffs an independent action for damages based on a purported violation of Article III, § 1.

By improperly recharacterizing plaintiffs' action, the Claims Court also foreclosed an issue to be determined on the merits. *O'Malley* determined that federal income taxes do not have a discriminatory impact on federal judges. Plaintiffs have had no opportunity to demonstrate whether the social security tax is discriminatory. The Claims Court erred in foreclosing this issue without full consideration of the merits. On remand, the Claims Court will have an opportunity to examine whether social security taxes have a discriminatory effect on federal judges.

The Claims Court also erred in viewing *King* as identical to this case for jurisdictional purposes. *Hatter*, 21 Cl.Ct. at 788. King was an Army Colonel who claimed that he had paid too much federal income tax because the Government misclassified his retirement status. The Court of Claims dismissed Colonel King's tax refund claim for failure to file a prior administrative claim with the Internal Revenue Service. *King*, 390 F.2d at 896. In equating the *Hatter* plaintiffs with Colonel King, the Claims Court overlooked pertinent distinctions.

First, plaintiffs in this case have an independent jurisdictional basis for their claim. Colonel King had no choice except to seek a tax refund. Second, unlike Colonel King, plaintiffs here do not challenge the United States' authority to impose a tax. Plaintiffs merely seek compensation to ensure that imposition of a tax does not diminish their salary. In sum, plaintiffs do not seek tax refunds, but compensation to ensure compliance with Article III, § 1. The Tucker Act provides the Claims Court jurisdiction to adjudicate this action.

## CONCLUSION

Appellants' claim for relief states a claim within the jurisdiction of the Claims Court. Therefore, the decision of the Claims Court is reversed and this case is remanded for a hearing on the merits.

**REVERSED AND REMANDED.**