CYPRUS AMAX COAL COMPANY, Cyprus Western Coal Company, Mountain Coal Company, Thunder Basin Coal Company, Consol of Kentucky Inc., Consol Pennsylvania Coal Company, Consolidation Coal Company, Garden Creek Pocahontas Company, Island Creek Coal Company, Laurel Run Mining Company, McElroy Coal Company, Ninevah Coal Company, Quarto Mining Company, Colony Bay Coal Company, Eastern Associated Coal Corp., Peabody Coal Company, Pine Ridge Coal Company, ANR Coal Company, LLC, Coastal Coal, Inc., Martiki Coal Company, Mettiki Coal Company, Permac, Inc., Pontiki Coal Company, Race Fork Coal Company, Eagle Energy, Inc., Elk Run Coal Company, Peerless Eagle Coal Company, Rawl Sales Processing, Co., Canyon Fuel Company LLC, Skyline Coal Company, Soldier Creek Coal Company, Southern Utah Fuel Company, Eagle Coal Company, Utah Fuel Company, Brooks Run Coal Company, Greenbrier Coal Company, Kingwood Coal Company, Virginia Iron, Coal And Coke Company, Enterprise Coal Company, Coastal Development Company And Sage Point Coal Company, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 99–5060.

United States Court of Appeals, Federal Circuit.

March 14, 2000.

Steven Becker, Coudert Brothers, of New York, New York, argued for plaintiffs-appellants. With him on the brief was Paul A. Horowitz.

Robert Stoddart, Attorney, Tax Division, Court of Federal Claims Section, Department of Justice, of Washington, DC,

argued for defendant-appellee. With him on the brief were Loretta C. Argrett, Assistant Attorney General, and Mildred L. Seidman, Chief, Court of Claims Section, Tax Division.

Before PLAGER, LOURIE, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

Cyprus Amax Coal Company and the other named plaintiffs (collectively Cyprus) are producers, sellers, and exporters of coal. Cyprus appeals the United States Court of Federal Claims judgment dismissing the Cyprus complaint without prejudice for lack of jurisdiction. *See Cyprus Amax Coal Co. v. United States,* Nos. 97–68T, 97–310T, 97–311T, 97–317T, 97–521T, 97–522T (Fed.Cl. Feb. 2, 1999). Cyprus alleged that the Coal Sales Tax, 26 U.S.C. 4121 (1994) (Coal Tax), violates the Constitutions Export Clause and Takings Clause. The Court of Federal Claims held that it lacked jurisdiction under the Tucker Act, 28 U.S.C. 1491(a)(1) (1994), to entertain those claims because Cyprus did not comply with the administrative process for obtaining a tax refund. Because we hold that the Export Clause provides an independent cause of action for monetary remedies that invokes the Court of Federal Claims jurisdiction under the Tucker Act, we reverse and remand. We do not reach the issue of whether the Takings Clause provides an independent cause of action.

## BACKGROUND

Cyprus commenced an action in the Court of Federal Claims seeking a refund for the payment of coal excise taxes in connection with the Coal Tax, which imposes a tax on coal from mines located in the United States sold by the producer. 26 U.S.C. 4121. While Congress generally exempts articles sold for export from excise taxes, the export sales of coal do not enjoy such an exemption. *See* 26 U.S.C. 4221(a)(2) (1994) (providing that no tax shall be imposed under [the Manufacturers Excise Taxes] chapter (other than under the [Coal Tax] ...) on the sale by the manufacturer ... of an article for export, or for resale by the purchaser to a second purchaser for export). Accordingly, Cyprus alleged that the Coal Tax violates the Export Clause, U.S. Const. Art. I, 9, cl. 5, and the Takings Clause, U.S. Const. amend. V.

The Cyprus plaintiffs comprised two sub-groups: (1) those who did not file for a tax refund with the Internal Revenue Service (IRS), *see* 26 U.S.C. 7422(a) (1994),[1] and (2) those who did file for a refund but failed to wait the requisite six months before commencing suit, *see* 26 U.S.C. 6532(a) (1994).[2] In its January 8, 1999 order, the Court of Federal Claims treated both plaintiff sub-groups as having failed to file for a tax refund and dismissed their complaint for lack of jurisdiction. Specifically, the court reasoned that

> [Section 7422(a)s] language does not permit an exception for cases in which taxpayers may believe that they are entitled to a refund because the statute on which the tax is based is unconstitutional. For that reason, we must hold that those of plaintiffs claims that have not been submitted to the appropriate agency pursuant to the statute are barred. We will dismiss those claims without prejudice.

---

1. Section 7422(a) provides as follows:

 No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary....

 26 U.S.C. § 7422(a).

2. Section 6532(a) provides as follows:

 No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim....

 26 U.S.C. § 6532(a).

*Cyprus Amax Coal Co. v. United States,* Nos. 97–68T, 97–310T, 97–311T, 97–317T, 97–521T, 97–522T (Fed.Cl. Jan. 8, 1999) (preliminary order dismissing the complaint without prejudice).

Following that order, Cyprus and the United States Government (the Government) filed a Joint Status Report and Motion to Enter Judgment of Dismissal Without Prejudice in which both parties agreed that nothing more needed to be decided because the court consolidated the plaintiffs and treated their complaint as a tax refund action. On February 2, 1999, in accordance with its earlier order, the Court of Federal Claims entered a judgment dismissing Cyprus's complaint without prejudice. *See Cyprus Amax Coal Co. v. United States,* Nos. 97–68T, 97–310T, 97–311T, 97–317T, 97–521T, 97–522T (Fed. Cl. Feb. 2, 1999) (entering judgment to dismiss complaint). Concurrent with filing this appeal, Cyprus complied with the tax refund statutes and commenced a tax refund action in the Court of Federal Claims.

## DISCUSSION

### Appellate Jurisdiction

■ Before determining whether the Court of Federal Claims had jurisdiction under the Tucker Act, we resolve preliminary issues concerning our jurisdiction over this appeal. At oral argument, the Government conceded that the Court of Federal Claims order constituted an involuntary dismissal without prejudice. As a general rule, an involuntary dismissal without prejudice is appealable as a final judgment. *See Nasatka v. Delta Scientific Corp.,* 58 F.3d 1578, 1580 (Fed.Cir.1995); see also *McGuckin v. Smith,* 974 F.2d 1050, 1053 (9th Cir.1992); *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 590 n. 1 (7th Cir.1986); see generally Charles Alan Wright et. al., *Federal Practice and Procedure* 3914.6 (2d ed.1992). That rule certainly applies to the present circumstances, in which the Court of Federal Claims dismissed Cyprus's entire complaint and re-filing the complaint with the same causes of action would be wasteful for Cyprus and a drain on judicial resources.

■ We also address whether Cyprus's subsequent compliance with the tax refund statute and filing of a tax refund action renders this appeal moot. We must dismiss an appeal as moot if an intervening event during the pendency of the appeal renders it impossible for this court to grant any effectual relief whatever [sic] to the prevailing party. *Church of Scientology v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)). The Court of Federal Claims dismissed Cyprus's constitutionally-based causes of action for lack of jurisdiction because Cyprus did not comply with the tax refund statute. On appeal, Cyprus requests this court to hold that complying with the tax refund statute is not a predicate for the Court of Federal Claims to exercise jurisdiction over those causes of action. However, given that Cyprus has now complied with the tax refund statute and filed a tax refund action, it can pursue the theories underlying its constitutionally-based causes of action through its tax refund action. The issue therefore is whether a decision in favor of Cyprus can afford it any relief more meaningful than it could otherwise obtain in its tax refund action.

Because this case involves a continuously imposed tax and a different statute of limitations pertains to the Tucker Act than to the tax refund statutes, this court can provide Cyprus with meaningful relief. The statute of limitations is six years for a cause of action brought under the Tucker Act. *See* 28 U.S.C. 2501 (1994). Conversely, the statute of limitations is three years for a tax refund action. *See* 26 U.S.C. 6511(a) (1994). Thus, this appeal is not moot because Cyprus can potentially recover an additional three years of taxes

under the Tucker Act than under a tax refund claim.[3]

## The Tucker Act

On appeal, we must determine whether Cyprus alleged a cause of action within the Court of Federal Claims jurisdiction under the Tucker Act. A determination of the Court of Federal Claims jurisdiction presents a question of law that we review de novo. *See, e.g., Wheeler v. United States,* 11 F.3d 156, 158 (Fed.Cir.1993). The Tucker Act, which constitutes a waiver of sovereign·immunity by the United States, *see United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), provides as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . .

28 U.S.C. 1491(a)(1) (1994).

The Tucker Act is a purely jurisdictional statute; on its own predicate, it does not enable a party to recover monetary damages from the United States. *See United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir.1997); *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967). Thus, to invoke jurisdiction under the Tucker Act, a party must point to a complementary substantive right found in another source of federal law, such as the Constitution, federal statutes, or executive regulations. *See Mitchell,* 463 U.S. at 216, 103 S.Ct. 2961. In addition, that substantive right must be fairly interpreted as mandating compensation by the Federal Government

for the damages sustained. *Id.* at 217, 103 S.Ct. 2961; *see Testan,* 424 U.S. at 400, 96 S.Ct. 948; *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998) (requiring a party to assert a claim under a separate money-mandating constitutional provision, statute, or regulation to invoke jurisdiction under the Tucker Act). This appeal therefore turns on whether the Export Clause, when fairly interpreted, affords an independent cause of action for monetary remedies.

## The Export Clause

The Constitutions Export Clause states that [n]o Tax or Duty shall be laid on Articles exported from any State. U.S. Const. art. I, 9, cl. 5. The Export Clauses mandate strictly prohibits any tax or duty, discriminatory or not, that falls on exports during the course of exportation. *United States v. International Business Machines Corp.,* 517 U.S. 843, 848, 116 S.Ct. 1793, 135 L.Ed.2d 124 (1996). The necessary implication of the Export Clauses unqualified proscription is that the remedy for its violation entails a return of money unlawfully exacted. Indeed, just as Congress's power to lay taxes enables it to collect money, *see* U.S. Const. art. I, 8, cl. 1, the Export Clauses restriction on taxing power requires Congress to refund money obtained in contravention of the clause. *Cf. Fairbank v. United States,* 181 U.S. 283, 300, 21 S.Ct. 648, 45 L.Ed. 862 (1901) (finding that constitutional provisions, whether granting or prohibiting a power to Congress, should be enforced with equal and full effect). Thus, given a fair textual interpretation, the language of the Export Clause leads to the ineluctable conclusion that the clause provides a cause of action with a monetary remedy.

The policies underlying the Export Clause confirm our textual interpretation. Records from the Federal Convention indi-

---

**3.** It is noted that some plaintiffs filed a motion to suspend the related proceedings and the Government did not object to the suspension. The Government has also filed motions to dismiss plaintiffs Greenbrier and Peabody's tax refund claims under 28 U.S.C. § 1500 (1994). We do not decide the merits of those motions at this time because they are still pending below.

cate that the Framers intended the Export Clause to allay the fears of certain States that they would bear a greater tax burden due to differing levels of exportation. *See, e.g.,* Max Farrand, *The Records of the Federal Convention of 1787* 307 (rev. ed. 1966) (Mr. Gerry thought the legislature could not be trusted with such a power [to tax exports]. It might ruin the Country. It might be exercised partially, raising one and depressing another part of it.); *id.* at 305 (Mr. Mason urged the necessity of connecting with the power of levying taxes ... that no tax should be laid on exports.). The Framers decision to phrase the Export Clause in unconditional language serves to free all exports from such a burden, *see International Business Machines,* 517 U.S. at 859–60, 116 S.Ct. 1793; *Fairbank,* 181 U.S. at 292–93, 21 S.Ct. 648, and the recognition of a monetary remedy furthers that purpose. Indeed, absent a prompt restoration of money unlawfully exacted, the Export Clause would be more hollow than real because in the event that Congress imposed export taxes, equitable relief alone could not ameliorate the harm.

Our reading of the Export Clause also finds support in Supreme Court precedent. In *United States v. United States Shoe Corp.,* 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998), the Supreme Court held that the Harbor Maintenance Tax, 26 U.S.C. 4461 (1994) (the HMT) (classifying the tax as a duty and providing for collection by the Customs Service), as applied to exports, violated the Export Clause. *See U.S. Shoe,* 523 U.S. at 367–70, 118 S.Ct. 1290. In so holding, the Supreme Court affirmed this courts five-judge panel decision in which we also struck down the statute and awarded money damages equaling the amount exacted under the HMT. *See United States Shoe Corp. v. United States,* 114 F.3d 1564, 1566, 1576 (Fed.Cir.1997), *aff'g* 907 F.Supp. 408 (CIT 1995), *aff'd* 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998). Thus, read in the context of the opinions below, the Supreme Courts *U.S. Shoe* decision makes clear that the Export Clause includes a correlative right to money damages as a remedy for its violation.

 We also hold that the cause of action based on the Export Clause is self-executing; that is, similar to the Compensation Clause, a party can recover for payment of taxes under the Export Clause independent of the tax refund statute. In *Hatter v. United States,* 953 F.2d 626, 627 (Fed.Cir.1992), the question before this court was whether plaintiffs could recover the exaction of social security taxes by the IRS through the Compensation Clause rather than a tax refund action. In *Hatter,* plaintiffs filed a complaint in the Claims Court alleging that the imposition of social security taxes diminished their salary in violation of the Compensation Clause, which provides that federal judges compensation shall not be diminished during their Continuance in Office. U.S. Const. art. III, 1. The Claims Court dismissed the complaint for lack of jurisdiction because the plaintiffs did not file administrative claims for tax refunds. *See Hatter,* 953 F.2d at 627.

On appeal, this court reversed and held that the Compensation Clause itself provides a monetary remedy for diminution of judicial compensation. *See id.* at 628. We reasoned that, fairly interpreted, the Compensation Clauses mandatory and unconditional language presupposes damages as the remedy for a governmental act violating the compensation clause. Only a timely restoration of lost compensation would prevent violation of the Constitutions prohibition against diminution of judicial salaries. *Id.* We then found that the Claims Court incorrectly treated plaintiffs complaint as a request for a tax refund, when the complaint sought damages for a constitutional violation. *See id.* at 629. We explained that plaintiffs could have chosen to pursue either a tax refund claim or an action based on the Compensation Clause, and because plaintiffs chose the latter, the Constitution triggered the Claims Courts

jurisdiction under the Tucker Act. *See id.* at 629–30.

The present case closely parallels *Hatter* in several respects. First, both cases raise the same jurisdictional issue: whether a taxpayer can invoke jurisdiction under the Tucker Act through a constitutional provision without first complying with the tax refund statute. Second, the Export Clause and Compensation Clause employ similar language. The Export Clause provides that *[n]o* Tax or Duty *shall be* laid, U.S. Const. art. I, 9, cl. 5 (emphasis added), while the Compensation Clause states that Compensation ... *shall not be* diminished. U.S. Const. art. III, 1 (emphasis added). Both clauses speak in absolute and unconditional terms, and both protect pecuniary interests. Third, here, as in *Hatter*, the challenged government action involves a collection of taxes by the IRS. Finally, in both cases, the court below treated plaintiffs constitutionally-based causes of action as tax refund claims.

Because *Hatter* addressed the same issue as presented here and because the salient facts in *Hatter* are virtually identical to the present case, we find the analysis in *Hatter* to be controlling. Thus, like the plaintiffs in *Hatter*, Cyprus was not required to pursue an administrative refund claim before filing suit because the Export Clause provides a self-executing cause of action that is not subject to compliance with the tax refund statute. Put differently, Cyprus had two alternative avenues through which to obtain relief—a tax refund action or a cause of action based on the Export Clause—and either one is sufficient to invoke the Court of Federal Claims jurisdiction under the Tucker Act.

The Government relies heavily on *United States v. New York & Cuba Mail S.S. Co.*, 200 U.S. 488, 26 S.Ct. 327, 50 L.Ed. 569 (1906), arguing that it requires a taxpayer to follow the administrative procedures for a tax refund before suing for money damages under the Export Clause. An examination of *New York & Cuba Mail*, however, reveals that the case cannot sustain the burden that the Government places on it. In *New York & Cuba Mail*, plaintiff alleged that a tax paid for stamps affixed to manifests of cargo violated the Export Clause. *See id.* at 489, 26 S.Ct. 327. Plaintiff initially sought to recover under a tax refund statute which provided that the Internal Revenue Commissioner could redeem such of the stamps, issued under authority of law, to denote the payment of any internal revenue tax, as may have been ... in any manner wrongfully collected. *Id.* at 494–95, 26 S.Ct. 327 (quoting Act of May 12, 1900, ch. 393, 31 Stat. 177). With the Commissioner having declined to [issue a refund], *id.* at 494, 26 S.Ct. 327, the plaintiff filed a complaint in district court attempting to invoke jurisdiction under the Tucker Act, *see id.* The Government demurred for failure to state a claim because plaintiff did not pay the tax under protest. *See. id.* at 490–91, 26 S.Ct. 327. The district court denied the demurrer and held that the tax was unconstitutional. *See id.* at 491, 26 S.Ct. 327. On appeal, the Supreme Court reversed, ordering the demurrer sustained and finding that plaintiffs failure to protest the tax at the time of payment resulted in non-compliance with the refund statute. *See id.* at 495, 26 S.Ct. 327. Thus, read properly, *New York & Cuba Mail* stands for the unremarkable proposition that a taxpayer suing to recover under a refund statute must satisfy all the requirements attendant to that statute. Here, given that Cyprus seeks to recover under the Export Clause rather than the tax refund statute, *New York & Cuba Mail* is of no moment.

The Government further contends that plaintiffs failure to protest in *New York & Cuba Mail* is tantamount to Cyprus's failure to file for a tax refund. That argument again misses the point. The failure to protest in *New York & Cuba Mail* was determinative because plaintiff proceeded under a tax refund statute. In this case,

however, Cyprus's instant complaint is not predicated on such a statute.

The Government next attempts to distinguish *U.S. Shoe* and *Hatter* from the present case. The Governments argument is as follows: *U.S. Shoe* involved a customs duty and *Hatter* involved compensation, but neither case involved recovery of a tax payment. Cyprus, on the other hand, seeks to recover taxes paid under the Coal Tax and collected by the IRS. Thus, because the Export Clause uses the term tax and Cyprus is challenging a tax, it must comply with the tax refund statute before it can sue to recover its payments.

While the Governments argument may be superficially appealing, it cannot withstand close scrutiny. The significance of *U.S. Shoe* lies not in the fact that the case involved a duty rather than a tax, but in its affirmance of the Export Clause as providing a cause of action for money damages. The language of the Export Clause prohibits with equal force the burdening of exports by a duty *or* a tax. Taking the language of the Export Clause in concert with *U.S. Shoe*, it follows that the clause provides a cause of action to recover money that was unlawfully exacted through either a duty or a tax. To read *U.S. Shoe* otherwise as endorsing a cause of action for money damages with respect to a duty but not a tax would afflict the Export Clause with an interpretive anomaly based on the form of the unlawful exaction, with no textual or precedential support for such a dichotomy.

The Government also misapprehends *Hatter*. According to its reading, the reason that the *Hatter* plaintiffs were not bound by the tax refund procedures while Cyprus is, rests on the Compensation Clauses reference to compensation rather than tax. That semantic distinction, however, is ephemeral. First, regardless of whether a constitutional provision refers to compensation, duty, or tax, the pertinent inquiry is whether that provision contemplates money damages as a remedy for its violation. *See Mitchell,* 463 U.S. at 217,

103 S.Ct. 2961. The touchstone of our analysis in *Hatter* and in this case is that the constitutional provision relied on by plaintiffs provides for money damages. Furthermore, in *Hatter* and the present case, the constitutional challenge stems from the same government action: a collection of taxes by the IRS. Thus, given that both the Compensation Clause and the Export Clause provide for money damages, there is no principled reason why a plaintiff challenging an IRS collection may sue independently of the tax refund statutes if proceeding under the Compensation Clause but is bound to follow those statutes if proceeding under the Export Clause.

Although Cyprus also alleges a cause of action under the Takings Clause, we need not reach that issue because the matter is properly resolved pursuant to the Export Clause.

## CONCLUSION

Because we hold that the Export Clause supplies an independent cause of action for monetary remedies that invokes the Court of Federal Claims jurisdiction under the Tucker Act, we reverse and remand for further proceedings.

*REVERSED* and *REMANDED.*

## COSTS

Each party shall bear its own costs.