ANDALEX RESOURCES, INC.,
et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. 99–268T, 00–241T, 00–245T, 00–634T, 98–414T, 00–457T, 00–249T, 00–244T, 99–299T, 00–243T, 97–68T, 97–310T, 97–311T, 97–317T, 97–521T, 97–522T, 98–557T, 98–200T, 01–252T, 00–218T, 00–216T, 00–248T, 00–762T, 00–247T, 99–301T, 01–423T, 00–236T, 99–298T, 00–250T, 01–422T, 00–242T, 00–246T, 00–467T, 01–252T, 00–148T, 02–200T.

United States Court of Federal Claims.

Nov. 19, 2002.

Steven H. Becker and Paul A. Horowitz, Coudert Brothers LLP, New York City, for plaintiffs Andalex Resources, Inc., et al.; Robert M. Rolfe, Hunton & Williams, Richmond, VA, for plaintiffs Buffalo Mining Company et al.; William L. Anderson, Crowell & Moring, Washington, DC, for plaintiffs Cyprus Amax Coal Company; William R. Rakes, Gentry, Locke, Roanoke, VA, for plaintiffs Concept Mining, Inc., et al.; David J. Levine, McDermott, Will & Emery, Washington, DC, for plaintiffs Pen Coal Corp.; John Y. Merrell, Jr., and John Y. Merrell, Merrell & Merrell, McLean, VA, for plaintiffs Black Rock Coal, Inc., et al.; Mary Lou Smith, Howe, Anderson & Steyer, Washington, DC, for plaintiffs Chisholm Coal Company; Eric Roger Thiessen, Penn, Stuart & Eskridge, Abington, VA, for plaintiff Rapoca Energy Company; and Dennis Jeffrey Whittlesey, Jackson & Kelly, Washington, DC for plaintiff Bluestone Coal Corp., et al.

Robert Charles Stoddart, and Robert N. Dorosin, United States Department of Justice, Tax Division, Washington, D.C., for defendant with whom were Eileen J. O'Connor, Assistant Attorney General; and Mildred L. Seidman, Chief, Court of Federal Claims Section.

## OPINION

HODGES, Judge.

The opinion that follows was issued on July 23, 2002, then withheld because the Federal Circuit's opinion in *United States Shoe Corporation,* was distributed the same day. *See United States Shoe Corp. v. United States,*

296 F.3d 1378 (Fed.Cir.2002). We issued an Order on July 25 advising the parties of the opinion granting defendant's motion for summary judgment, and asked how they wished to proceed in light of the *U.S. Shoe* decision.[1]

We held a hearing on August 29 to discuss the effect of the Federal Circuit's opinion on this case, and the parties briefed the issue further in September. We have considered the parties' arguments, and submit the opinion herewith as it was drafted.

## INTRODUCTION

Plaintiff coal producers paid federal taxes on their shipments of coal pursuant to 26 U.S.C. § 4121. Some of the shipments included exports. A federal district court held that the coal tax was unconstitutional when applied to exports. *Ranger Fuel Corp. v. United States*, 33 F.Supp.2d 466 (E.D.Va. 1998). The Government did not appeal this holding. The Internal Revenue Service issued a notice of acquiescence to the *Ranger Fuel* ruling in May 2000. *See* Notice 2000–28, 2000–21 I.R.B. 1116 (May 22, 2000). Plaintiffs subsequently brought claims for refunds in this court under the Tucker Act and filed motions for summary judgment on the issue of interest on those claims. *See Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369 (Fed.Cir.2000), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001).

The Government filed a cross-motion for partial summary judgment on the interest issue. We grant defendant's cross-motion for partial summary judgment.

## BACKGROUND

The Federal Circuit reversed this court's holding that the Court of Federal Claims lacked jurisdiction to entertain plaintiffs' constitutionally-based tax claims because they had not observed administrative tax refund requirements. *See Cyprus Amax*, 205 F.3d at 1371. The Circuit explained that plaintiffs

met the jurisdictional requirements of this court because "the Export Clause is self-executing." *Id.* at 1374. Therefore, "a party can recover for payment of taxes under the Export Clause independent of the tax refund statute." *Id.*

The appeals court explained that plaintiffs "had two alternate avenues through which to obtain relief—a tax refund action or a cause of action based on the Export Clause—and either one is sufficient to invoke the Court of Federal Claims' jurisdiction under the Tucker Act." *Id.* at 1375. The Export Clause provides plaintiffs with an alternate means to recover their tax overpayments under the Tucker Act. The Circuit's *Cyprus Amax* decision permits plaintiffs to use the Tucker Act's six-year statute of limitations without complying with the administrative tax refund requirements. *Id.* at 1372. Plaintiffs "can potentially recover an additional three years of taxes under the Tucker Act than under a tax refund claim." *Id.* at 1372–73. Now plaintiffs seek awards of interest added to any judgments of tax overpayment that this court may allow.

## DISCUSSION

Plaintiffs employ the alternate avenue of relief supplied by the Export Clause of the Constitution and by the ruling of the Federal Circuit in *Cyprus Amax*. By choosing this avenue, they can recover six years of tax overpayments instead of the three years that would have been permitted according to the administrative process of the tax code. Their claims for interest are predicated both upon the statutory provisions of 28 U.S.C. § 2411 and upon the Export Clause of the Constitution.

### 28 U.S.C. § 2411 Claims

"[T]he United States upon claims made against it, cannot, in the absence of a statute to that end, be subjected to the payment of interest." *United States v. Rogers*, 255 U.S. 163, 169, 41 S.Ct. 281, 65 L.Ed. 566 (1921)

---

1. "While the export clause provides plaintiffs with an alternate and independent avenue for tax overpayment recovery, the provision is not interest-mandating. Because the export clause does not contain a constitutional waiver of sovereign immunity, plaintiffs cannot recover interest un-

der that provision. On that basis, we would grant defendant's cross-motion for summary judgment." *Andalex Resources, Inc., et al. v. United States*, No. 99–268T (Fed.Cl. July 25, 2002).

(citations omitted). According to plaintiffs, Congress provided the necessary waiver of sovereign immunity for us to award them interest, in 28 U.S.C. § 2411. Section 2411 of Title 28, United States Code, provides in pertinent part:

> In any judgment of any court rendered (... against the United States ...) for any overpayment in respect of any internal-revenue tax, interest shall be allowed at the overpayment rate established under section 6621 of the Internal Revenue Code of 1986 upon the amount of the overpayment, from the date of the payment or collection thereof to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner of Internal Revenue.

28 U.S.C. § 2411. Plaintiffs assert that this court must award interest on their claims because they will receive: 1) a judgment rendered against the United States; 2) for an overpayment; 3) in respect of an internal revenue tax.

The Government contends that plaintiffs' choice to pursue their claims under the Export Clause of the Constitution precludes their claims for pre-judgment interest under § 2411. Congress enacted § 2411 to aid in judicial enforcement of tax refunds; it is essentially a tax refund statute. Plaintiffs have chosen to pursue their claims independently of the tax refund system, so they may not use the § 2411 waiver of sovereign immunity for interest payments.

28 U.S.C. § 2411 Waiver of Immunity

█ The Tucker Act gives this court jurisdiction to hear tax refund actions. "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon ... any Act of Congress ...." 28 U.S.C. § 1491. The Tucker Act includes a six-year statute of limitations. *See* 28 U.S.C. § 2501. The Tucker Act is a jurisdictional statute and its statute of limitations is general.[2] As a result, tax refund claims brought in the Court of Federal Claims under the Tucker Act generally retain the shorter limitations provided by the Internal Revenue Code, 26 U.S.C. § 6511 (2002).[3] The IRC limitations apply in situations like plaintiffs' where a statute is declared unconstitutional after the parties have paid taxes:

> The statute of limitation on the right to a refund or to recover any amount assessed and collected as a tax cannot be made to depend upon the question of whether there was any legal authority for the assessment and collection. [Otherwise] the statute of limitation would be practically of no force or effect. The statute of limitation is jurisdictional in this court, and when ... the time within which a person may bring a suit against the United States has expired, or that plaintiff has not complied with the requirements necessary to give him a right to maintain a suit, this court is without jurisdiction to entertain it.

*West Publ'g Co. Employees' Preferred Stock Ass'n v. United States,* 198 Ct.Cl. 668, 674–75, 1972 WL 20800 (1972) (quoting *Wisconsin National Life Ins. Co. v. United States,* 70 Ct.Cl. 433, 438, 42 F.2d 316 (1930)).

Tax refund claims brought under Tucker Act jurisdiction are further restricted by administrative requirements. "[A]n administrative claim must be filed before a suit seeking a refund may be brought *in any court.*" *Williams v. United States,* 11 Cl.Ct. 189, 191 (1986), *aff'd* 818 F.2d 877 (Fed.Cir. 1987) (citing 26 U.S.C. § 7422(a)) (emphasis added). As a result, "[f]ailure to plead and demonstrate that a timely administrative

---

**2.** The Court of Claims explained this in *West Publ'g Co. Employees' Preferred Stock Ass'n v. United States,* 198 Ct.Cl. 668, 674 n. 6, 1972 WL 20800 (1972) (quoting *United States v. A.S. Kreider Co.,* 313 U.S. 443, 447, 61 S.Ct. 1007, 85 L.Ed. 1447 (1941)):

> [T]here has been no question but that the general six-year statute was intended only as an outside limit on the period within which all suits against the United States might be begun, and that "Congress left it open to provide less liberally for particular actions which, because

of special considerations, required different treatment."

**3.** 26 U.S.C. § 6511(a) provides in pertinent part:

> Period of limitation on filing claim. Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid ....

claim has been filed ... wrests jurisdiction from this court." *Id.* at 191–92.

Plaintiffs must file timely refund claims with the IRS, followed by complaints submitted to this court demonstrating their adherence to administrative requirements, to receive judgments under the Tucker Act. If the court renders judgment in their favor, and the refund is based upon a tax overpayment, 28 U.S.C. § 2411 provides interest on the judgment. Plaintiffs would avoid the shorter statute of limitations, and the administrative requirements of the tax refund statutes by using the Export Clause for jurisdiction, while returning to the tax statutes to obtain interest pursuant to § 2411.

### 28 U.S.C. § 2411 Interest

Plaintiffs are not seeking tax refunds, yet they claim that 28 U.S.C. § 2411 authorizes awards of interest on their claims. They contend that § 2411 provides interest on any judgment for restitution of tax overpayments, regardless of whether the claimant adhered to administrative tax refund requirements.

Plaintiffs chose to pursue their claims for damage under the Export Clause rather than as tax refunds pursuant to the Tax Code. "Because their claims are not for tax or penalty refunds, their claims do not fall within the jurisdiction of the Court of Federal Claims pursuant to 28 U.S.C. § [ ] ... 1491, the statute[ ] that give[s] the Court of Federal Claims jurisdiction over claims for tax refunds." *Brown v. United States,* 105 F.3d 621, 623 (1997).[4] As the Federal Circuit explained, plaintiffs have removed themselves from the tax refund system and this court's jurisdiction over tax refund claims. *Id.* Plaintiffs' claims here fall within the jurisdiction of this court only because the Export Clause provides them with an independent cause of action for a monetary remedy. *Cyprus Amax,* 205 F.3d at 1374.

Title 28 U.S.C. § 2411 permits claimants to receive pre-judgment interest in tax refund cases. It provides an express waiver of sovereign immunity for such claims against the Government. *See Library of Congress v. Shaw,* 478 U.S. 310, 318 n. 6, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Claimants must be within the tax refund system to receive interest pursuant to § 2411, however. The Court of Claims so ruled in *Economy Plumbing & Heating Co. v. United States,* 200 Ct.Cl. 31, 470 F.2d 585 (1972). The court explained:

> We do not think that the provisions of 28 U.S.C. § 2411[ ] and Section 6611 of the Internal Revenue Code providing for interest ... upon "any overpayment in respect of any internal-revenue tax" ... has any application to this case. We interpret those statutes as applying only to taxpayers who have overpaid their taxes, have filed a timely claim for refund, *and are within the administrative system providing for the recovery of overpaid taxes and are entitled to its benefits.*

*Id.* at 591–92 (emphasis added).[5] Plaintiffs in this case are taxpayers who overpaid their taxes and they filed claims for refunds. However, they brought this action under the Export Clause, and are not entitled to the benefits of the tax refund system.

Tax refund statutes apply to tax refund actions. Plaintiffs may not use § 2411 to recover interest on any judgment that this court may render regarding plaintiffs' principal claims. We may award interest only if the Export Clause mandates interest.

### Export Clause Claims

■ Plaintiffs claim that constitutional provisions carrying a requirement for monetary awards inherently provide for interest awards. In effect, any money-mandating Constitutional provision implies a similar Constitutional mandate for interest. We agree with the Government that this court may award pre-judgment interest on plain-

---

4. In *Brown,* the Federal Circuit declared that plaintiff taxpayers' claims for monetary damages based upon fraudulent takings and Fourth Amendment violations lacked subject matter jurisdiction in the Court of Federal Claims under the Tucker Act's tax refund jurisdiction. *See Brown v. United States,* 105 F.3d 621 (1997).

5. In *Economy Plumbing,* the Court of Claims considered whether plaintiffs, who originally brought suit under a contract claim, could use 28 U.S.C. § 2411(a) to recover interest. *See Economy Plumbing,* 200 Ct.Cl. 31, 470 F.2d 585 (1972).

tiffs' Constitutionally-based claims only if the Export Clause mandates such an award.

Plaintiffs argue that money-mandating constitutional provisions implicitly are interest-mandating provisions. *See Library of Congress v. Shaw*, 478 U.S. 310, 317, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). They contend that this argument that the Constitution requires payment of interest is supported by court rulings under the Fifth Amendment Takings Clause and the Judicial Compensation Clause of Article III.

### Fifth Amendment Takings Clause

"[T]he United States is not liable to interest except where it assumes the liability by contract or by the express words of a statute, or must pay it as part of the just compensation required by the Constitution." *Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 47, 49 S.Ct. 52, 73 L.Ed. 170 (1928) (citing *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 304, 306, 43 S.Ct. 354, 67 L.Ed. 664 (1923)). The Court later noted that "[t]he allowance of interest in eminent domain cases is only an apparent exception [to the "no-interest" rule], which has its origin in the Constitution." *Smyth v. United States*, 302 U.S. 329, 353, 58 S.Ct. 248, 82 L.Ed. 294 (1937) (citing *Shoshone Tribe of Indians v. United States*, 299 U.S. 476, 497, 57 S.Ct. 244, 81 L.Ed. 360 (1937)). "The requirement that 'just compensation' shall be paid is comprehensive and includes all elements and no specific command to include interest is necessary when interest or its equivalent is part of such compensation." *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664 (1923).

Plaintiffs argue that the Fifth Amendment's requirement that interest be paid arises not from the Constitution's mandate for payment of "just compensation," but from the constitutional roots of the Fifth Amendment itself. They offer *Hatter v. United States*, 38 Fed.Cl. 166 (1997), which involves Article III of the Constitution, as support for

this argument. *See Hatter v. United States*, 38 Fed.Cl. 166 (1997).

### Article III Judicial Compensation Clause

The Federal Circuit ruled that Article III of the Constitution is money-mandating, as it relates to judicial compensation. *Hatter v. United States*, 953 F.2d 626, 628 (Fed.Cir. 1992). Article III "mandates the payment of money in the event of ..." its violation. *Id.* at 628. The court reasoned that the provision declares "in mandatory and unconditional terms, that judges' salaries 'shall not be diminished during their Continuance in Office.'" *Id.* The compulsory language of the Article and its implied mandate for repayment "presupposes damages as the remedy for a governmental act violating the [provision]." *Id.*

The Court of Federal Claims ruled that Article III is interest-mandating. *See Hatter v. United States*, 38 Fed.Cl. 166 (1997).[6] The court derived this affirmative requirement from the language of Article III "specifically requir[ing] that judicial compensation be paid 'at stated Times.'" *Id.* at 183 (citations omitted). The cardinal objective of the provision "is to maintain the independence of the federal judiciary." *Id.* The court reasoned that a failure to award interest for violations of the Judicial Compensation Clause would threaten this independence because "Congress would then be free to delay indefinitely payment of the principal amount of protected compensation leaving the judges with no remedy for the delay." *Id.*

Plaintiffs maintain that the trial court's view of Article III as an interest-mandating provision follows logically from the Federal Circuit's holding that Article III "mandates the payment of money in the event of a prohibited compensation diminution." *Hatter*, 953 F.2d at 628. Plaintiffs contend that the necessary implication of the *Hatter* decisions is that any Constitutional provision providing a cause of action for money damages provides also a cause of action for pre-judgment interest. This argument does not re-

---

**6.** The Federal Circuit considered issues arising from the *Hatter* litigation five times, but that court has not ruled on whether interest is available under the Judicial Compensation Clause. We do not agree with plaintiffs' suggestion that the Federal Circuit accepted the Court of Federal Claims' award of interest in *Hatter v. United States*, 38 Fed.Cl. 166 (1997); the decision was not appealed.

solve the issue of defendant's sovereign immunity to interest liability.

Plaintiffs point out that the Export Clause and Article III employ wholly prohibitive language, and both are money-mandating. Because the Compensation Clause is interest-mandating, the Export Clause must be as well, they contend.

The Export Clause and Article III employ similar prohibitive language. The Federal Circuit stated that, "[b]oth clauses speak in absolute and unconditional terms, and both protect pecuniary interests." *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1375 (Fed.Cir.2000), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001). The Export Clause, like the Judicial Compensation Clause, is money-mandating. *Cyprus Amax*, 205 F.3d at 1373.[7] Both arise under the Constitution. Such similarities do not compel this court to hold that the Export Clause is also interest-mandating, however.

### Prohibition Does Not Equate To Interest–Mandating

The Export Clause and Article III use prohibitive language, but an affirmative requirement of restorative compensation is present only in the Compensation Clause. The Court of Federal Claims grounded its award of pre-judgment interest for violations of Article III upon this affirmative requirement. *See Hatter v. United States*, 38 Fed. Cl. 166 (1997). The court reasoned that the affirmative requirement derives from the language of Article III requiring payment of judicial compensation at specific times and that the compensation paid may not be diminished. *Id.* at 182–83. "There is a sounder basis for interest on delayed compensation protected under Article III than on just compensation guaranteed by the Fifth Amendment." *Id.* The court predicated this resolution upon Article III's requirement of payment "at stated Times" and upon the Clause's purpose of preserving the autonomy of the federal judiciary. *Id.* The Export Clause lacks such an affirmative requirement or implied right to pre-judgment interest.

The Export Clause contains a proscription against certain government actions. The Supreme Court stated that the "text of the Export Clause ... expressly prohibits Congress from laying any tax or duty on exports." *United States v. Int'l. Bus. Machs. Corp.*, 517 U.S. 843, 852, 116 S.Ct. 1793, 135 L.Ed.2d 124 (1996). The language of the Export Clause establishes the provision as a bare prohibition against taxation. It lacks the affirmative requirement for an award of pre-judgment interest discerned in the judicial Compensation Clause. The Court of International Trade arrived at the same conclusion. *See Swisher Intern., Inc. v. United States*, 178 F.Supp.2d 1354 (CIT 2001).[8]

> The Export Clause merely contains a prohibition against government action ... [I]t is not an absolute and affirmative requirement to restore Plaintiffs to their prior position. It is this affirmative requirement that fully waives sovereign immunity under the [Takings] Clause of the Fifth Amendment and perhaps under Article III.

*Swisher*, 178 F.Supp.2d at 1362.

"The framers of the constitution employed words in their natural sense; and, where they are plain and clear, resort to collateral aids to interpretation is unnecessary, and cannot be indulged in to narrow or enlarge the text ...." *McPherson v. Blacker*, 146 U.S. 1, 27, 13 S.Ct. 3, 36 L.Ed. 869 (1892). The Export Clause is unambiguous. The prohibition against governmental action does not imply a requirement for an award of interest.

The Export Clause lacks any form of directive that parallels Article III's requirement for compensation payment "at stated Times." The Court of Federal Claims expressed the importance of this timing re-

7. The Federal Circuit determined that, "given a fair textual interpretation, the language of the Export Clause leads to the ineluctable conclusion that the clause provides a cause of action with a monetary remedy." *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed.Cir. 2000), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001).

8. Plaintiffs in *Swisher* appealed the Court of International Trade's holding soon after the court released its slip opinion. One of the issues currently on appeal before the Federal Circuit is the denial of plaintiffs' claim for an award of pre-judgment interest under the Export Clause.

quirement in its holding that Article III provides pre-judgment interest. *See Hatter v. United States,* 38 Fed.Cl. 166 (1997).

The court reasoned that the underlying purpose of the Judicial Compensation Clause "is to maintain the independence of the federal judiciary" by providing a remedy for its violation. *Hatter* 38 Fed.Cl. at 183. The purpose of the Export Clause is "the requirement ... that exports should be free from any governmental burden." *See, e.g., United States v. Hvoslef,* 237 U.S. 1, 15, 35 S.Ct. 459, 59 L.Ed. 813 (1915) (*quoting Fairbank v. United States,* 181 U.S. 283, 290, 21 S.Ct. 648, 45 L.Ed. 862 (1901)).[9]

The Export Clause does not require a self-contained and all-encompassing remedy to further its purpose. The Internal Revenue Code provides full compensatory remedies for violations of the Export Clause. Claimants may take advantage of these remedies so long as they follow the administrative requirements discussed previously in the § 2411 analysis. The holding in *Cyprus Amax* provides plaintiffs with an alternate and independent avenue of relief under the Export Clause to recover their tax overpayments. *Cyprus Amax,* 205 F.3d at 1375. A finding that the Export Clause is interest-mandating would not further the underlying purpose of the provision. Such a holding would neither prevent the imposition of tax burdens upon exports, nor provide claimants with a unique remedy for violations of the clause. The *Hatter* rationale for finding that Article III is interest-mandating does not apply to the Export Clause. *See Hatter v. United States,* 38 Fed.Cl. 166 (1997).

### Money–Mandate Does Not Mean Interest–Mandate

Plaintiffs next rely upon statements made by the Federal Circuit that the Export Clause is money-mandating. *Cyprus Amax,* 205 F.3d at 1373. They argue that money-mandating constitutional provisions require money damages, which include compensation. Compensation is the basis for interest awards under the Constitution. As the Export Clause arises under the Constitution, it requires an award of pre-judgment interest.

The *Cyprus Amax* court did not suggest that the Export Clause is interest-mandating. *See Cyprus Amax,* 205 F.3d 1369 (Fed.Cir. 2000). The court did not address the issue of interest at all. The only issue considered by the Federal Circuit in *Cyprus Amax* for the purposes of this analysis was the Exports Clause's ability to provide "an independent cause of action for [a] monetary remed[y]." *Id.* at 1370. The Circuit concluded that "the Export Clause's restriction on taxing power requires Congress to refund money obtained in contravention of the clause." *Id.* at 1373.

A money-mandating provision is not necessarily an interest-mandating provision. The Supreme Court has observed that "[t]he allowance of interest on damages is not an absolute right." *Boston Sand & Gravel,* 278 U.S. at 41, 49, 49 S.Ct. 52 (quoting *The Scotland,* 118 U.S. 507, 518, 6 S.Ct. 1174, 30 L.Ed. 153 (1886)).

The Takings Clause and the Compensation Clause do not confer rights to interest based only upon their money-mandating nature. The unique language found in both Constitutional provisions requires the Government to restore claimants to the relative positions that they would have occupied but for the violations.

> [T]he reasoning on which interest is added to value as a part of "just compensation"... is not applicable to this situation. That reasoning is that when a court determines just compensation, it first fixes bare value at the time of the taking and adds a sum to compensate for deferred payment of bare value so as to make the property owner whole *as required by the Fifth Amendment.*

*Albrecht v. United States,* 329 U.S. 599, 603, 67 S.Ct. 606, 91 L.Ed. 532 (1947) (emphasis added). "It is the meaning embodied in the

---

9. Plaintiffs suggest that an award of interest would further the purpose of the Export Clause because "exports should not be made a source of revenue to the national government." *Fairbank v. United States,* 181 U.S. 283, 292–93, 21 S.Ct. 648, 45 L.Ed. 862 (1901). However, the *Fair-*

bank court stated that this is only part of the Export Clause's purpose. *Id.* It is not equivalent to the primary, underlying purpose of Article III that was given so much weight by the *Hatter* court. *See Hatter v. United States,* 38 Fed.Cl. 166 (1997).

term 'just compensation' which creates the requirement that the government provide a 'full and exact equivalent' in the form of interest." *Olson v. United States*, 292 U.S. 246, 254–55, 54 S.Ct. 704, 78 L.Ed. 1236 (1934).

The Constitution requires waiver of sovereign immunity for the recovery of interest against the Government. "In the absence of *constitutional requirements*, interest can be recovered against the United States only if express consent to such a recovery has been given by Congress." *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 658–59, 67 S.Ct. 601, 91 L.Ed. 577 (1947) (emphasis added). The Export Clause lacks such a constitutional requirement.

## CONCLUSION

Plaintiffs brought their claims in this court under the Export Clause of the Constitution. They do not assert a tax refund suit under the Tucker Act. Title 28 U.S.C. § 2411 provides a statutory waiver of sovereign immunity to interest liability only for claims brought within the tax refund system. Plaintiffs do not seek a tax refund, so they cannot recover interest under § 2411. While the Export Clause provides plaintiffs with an alternate and independent avenue for recovery, an overpayment of tax in this case, it is not interest-mandating. It does not contain a Constitutional waiver of sovereign immunity, and plaintiffs cannot recover interest under its terms.

Plaintiffs' Cross–Motion for Summary Judgment is DENIED. Defendant's Cross–Motion is GRANTED.