# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 02-2915
_____

Clarice A. Stahl; Loretta A. Anderson;   *
Thomas K. Anderson;  Don A.     *
Armstrong; Mary A. Armstrong; Joseph *
Bauer; Coy Beardsley; Sue Beardsley;  *
Anna Lou Bergtoll; Leo O. Bergtoll;   *
Edwin C. Berkholtz, Jr.; Lois J.      *
Berkholtz; Becky Bizzle; Gilbert Bizzle;*
Edroy Boe; Solveig Boe; Dennis D.    *
Bromaghin; Phyllis G. Bromaghin,    *
                                 *

      Plaintiffs/Appellants,     *   Appeal from the United States
                                 *   District Court for the
Darrell Bukaske,              *   District of North Dakota.
                                 *
      Plaintiff,               *
                                 *
Kathleen W. Burgess; Lesley W.     *
Burgess; James E. Clark; Lillian Clark; *
Donald R. Cloose; Elvera O. Cloose;  *
Robert H. Cotton; Delma K. Delp; Jay  *
E. Delp; Robert N. Dettenhaim; Vicky  *
R. Dettenhaim; Eleanor A. Gladish;   *
Charles Leland Gladish; Frances A.   *
Glinsmann; Wendell C. Glinsmann;    *
Marvin F. Greiner; James A. Hamilton; *
Karla K. Ibes; Robert D. Ibes, Jr.; Don *
L. Jensen; Leola F. Jensen; Gladys M.  *
Jourdan; Paul M. Jourdan; Catherine R. *
Kainz; Dennis L. Kainz; Carol       *
Kinnischtzke; Karyl Kinnischtzke; Don *
A. McClanahan; Krystal G.        *

McClanahan; Carol McCrery; Dennis     *
McCrery; Gerald Mercer; Sharon O.     *
Mercer; Terry R. Mercer; Allen H.     *
Merrick; Carol A. Merrick; Clarence     *
A. Merrick; Verna Merrick; Raymond     *
Meyer; Raymond Meyer; Valerie     *
Meyer; Mary Katherine Miller; Ralph     *
A. Miller; Arlen W. Morgan; Lois E.     *
Morgan; Linda A. Novak; Melvin J.     *
Novak; Lindsay Orr; Julie Orr;     *
Carl P. Palczewski; Esther L.
Palczewski; Frank L. Privratsky; Lonnie *
J. Privratsky; Marilyn J. Rahe; Robert F. *
Rahe; Johnny W. Roberts; Norma H.     *
Roberts; Carol M. Roth; J. Richard     *
Roth; Helen Rowan;  Robert Rowan;     *
D.L. Simmons; Cynthia L. Simmering;     *
Donald C. Simmering, II; Bernadette L.     *
Sobolik; Miles P. Sobolik; William J.     *
Spiczka; Janice D. Spiczka; Harris O.     *
Stevens; Jacqueline Stevens; Dennis     *
Strom, doing business as Strom Ranch,     *
Inc.; Phyllis Sullivan; Wayne Sullivan;     *
Jennings D. Sunderland; Clarice     *
Sunderland; Noelle J. Swanson;     *
Richard A. Swanson; Jay R. Thacker;     *
Valerie Thacker; Donna S.     *
Throgmorton; Guy L. Throgmorton;     *
Harold D. Volbrecht; Sheryl K.     *
Volbrecht; Glenn O. Wagner; Herman F.*
Werle; Marsha L. Werle; Larry L.     *
Zechiel; Ruth A. Zechiel; Arlene M.     *
Ziemer; Rynold W. Ziemer; Terry W.     *
Thomas,     *
    *
    Plaintiffs/Appellants,     *

|  |  |
|---|---|
| v. | * |
|  | * |
| United States Department of | * |
| Agriculture, Secretary of Agriculture, | * |
| in her Official Capacity, Agent Ann M. | * |
| Veneman, | * |
|  | * |
| Defendant/Appellee. | * |

_____

Submitted: March 10, 2003

Filed: May 6, 2003
_____

Before WOLLMAN, RICHARD S. ARNOLD, and MURPHY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

The appellants entered into agreements with the United States Department of Agriculture (USDA) whereby the USDA agreed to write-down a portion of their debt in exchange for part of the appreciation in the value of their farms or ranches during the term of the agreement. Appellants initiated this declaratory judgment action, arguing that their obligation to pay ended with the term of the agreement and challenging the USDA's determination of the maximum amount collectible under the agreements. The district court[1] granted the USDA's motion to dismiss. We affirm.

I.

The Agricultural Credit Act of 1987, 101 Stat. 1679 (1988), allowed farmers and ranchers who were delinquent in payments on various agricultural loans to

_____

[1]The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

-3-

restructure their debts. The Act provided for write-down of secured debt to reflect the market value of the land securing the loan. In exchange for the write-down, the USDA required each of the appellants to sign a Shared Appreciation Agreement (Agreement). The Agreement provided in part:

> As a condition to, and in consideration of, [USDA] writing down the above amounts and restructuring the loan, Borrower agrees to pay [USDA] an amount according to one of the following payment schedules:
>> 1. Seventy-five (75) percent of any positive appreciation in the market value of the property securing the loan as described in the above security instrument(s) between the date of this Agreement and either the expiration date of this Agreement or the date the Borrower pays the loan in full, ceases farming or transfers title of the security, if such event occurs four (4) years or less from the date of this Agreement.
>> 2. Fifty (50) percent of any positive appreciation in the market value of the property securing the loan above as described in the security instruments between the date of this Agreement and either the expiration date of this Agreement or the date Borrower pays the loan in full, ceases farming or transfers title of the security, if such event occurs after four (4) years but before the expiration date of this Agreement.
>
> The amount of recapture by [USDA] will be based on the difference between the value of the security at the time of disposal or cessation by Borrower of farming and the value of the security at the time this Agreement is entered into. If the borrower violates the term of this agreement [USDA] will liquidate after the borrower has been notified of the right to appeal.

Appellants submitted affidavits asserting that the USDA county supervisors with whom they signed the agreements had informed them that, if they had not paid the loan in full, sold their land, or quit farming before the expiration of the agreement, they would owe nothing.

Appellants filed a declaratory judgment action, seeking a determination that they owed no money to the USDA under the Agreement or, alternatively, that they owed at most an amount specified on an exhibit attached to the Agreement. The district court granted the USDA's motion to dismiss for failure to state a claim on which relief could be granted. On appeal, appellants contend that the district court erred by considering matters outside the pleadings in resolving the USDA's motion to dismiss. In addition, the appellants contend that several issues of law cannot be resolved in the USDA's favor on the existing record.

## II.

We review <u>de novo</u> the district court's grant of a motion to dismiss, affirming only if, accepting all allegations as true, it appears that the plaintiff can prove no set of facts that would entitle him to relief. <u>Schaller Tel. Co. v. Golden Sky Sys., Inc.</u>, 298 F.3d 736, 740 (8th Cir. 2002). If the district court considered "matters outside the pleading" in deciding a motion to dismiss, Rule 12(b)(6) requires that the motion "be treated as one for summary judgment." Fed. R. Civ. P. 12(b)(6); <u>Casazza v. Kiser</u>, 313 F.3d 414, 417-18 (8th Cir. 2002).

## A.

Appellants contend that the district court erred by considering matters outside the pleadings and by refusing to convert the motion to one for summary judgment, thereby denying the appellants an opportunity to conduct discovery or present evidence. The government's Rule 12(b)(6) motion to dismiss was accompanied by a Rule 12(b)(1) motion to dismiss for lack of jurisdiction and six documentary exhibits. Exhibits 1 and 5 were the Agreement and the "Exhibit B" form, both of which were also attached to the appellants' complaint. In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss. <u>See</u> <u>In re K-Tel Int'l, Inc. Sec. Litig.</u>, 300 F.3d 881, 889 (8th Cir. 2002); <u>Rosenblum v.</u>

Travelbyus.com, Ltd., 299 F.3d 657, 661 (7th Cir. 2002). Exhibit 2 was a copy of instructions to farmers regarding the Agreements that had been published in the Code of Federal Regulations. 7 C.F.R. Part 1951, Subpart S, Exh. A (1989). Exhibit 4 was a copy of a Department of Agriculture regulation. The district court may take judicial notice of public records and may thus consider them on a motion to dismiss. Faibisch v. Univ. of Minn., 304 F.3d 797, 802-03 (8th Cir. 2002). Exhibit 6, an Administrative Notice issued by the USDA in June 1989, is a public record and was referenced by appellants' complaint. Accordingly, each of these exhibits properly could be considered by the district court in ruling on a motion to dismiss. See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

Exhibit 3 was the affidavit of Arthur Hall, Director of Farm Loan Servicing and Property Management Division of the USDA's Farm Service Agency. Although primarily relevant to the USDA's Rule 12(b)(1) motion to dismiss for failure to exhaust administrative remedies, the affidavit contained a statement that recapture "is triggered by certain events including expiration of the [Agreement]." In addition, the USDA presented to the district court a 1989 Internal Revenue Service advisory letter concerning the tax treatment of the Agreement and suggesting that the borrower would owe the amount of write-down at the expiration of the Agreement. If considered for purposes of interpreting the Agreement, Exhibit 3 and the IRS advisory letter would constitute matters outside the pleadings and would require the district court to convert the motion to dismiss into one for summary judgment. However, "[t]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." 5A Wright & Miller, Federal Practice and Procedure § 1366, at 491 (2d ed. 1990); Casazza, 313 F.3d at 417-18. Despite the district court's statement that it had considered the "entire file," these materials were irrelevant to its resolution of the merits of the motion. Consequently, we conclude that the district court did not err in resolving the USDA's motion as one to dismiss rather than as one for summary judgment.

B.

"When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604, 607 (2000) (citation omitted). The rule of construction that ambiguities are to be construed against the drafter applies with equal, if not greater, force against the United States. United States v. Seckinger, 397 U.S. 203, 209-10 (1970). Under no circumstances, however, may we construe a contract in a manner that would violate conditions that Congress has placed on funds appropriated for the program. See Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 424-25 (1990) (citing the Appropriations Clause, U.S. Const. art. I, § 9, cl. 7). Accordingly, we construe the Agreement in light of the statutes and regulations authorizing the USDA to enter into such agreements.

Title 7 U.S.C. § 2001 directs the Secretary of Agriculture to "modify delinquent farmer program loans . . . to avoid losses to the Secretary on such loans." The Secretary is to give "priority consideration" to "writing-down the loan principal and interest (subject to subsections (d) and (e)), and debt set-aside (subject to subsection (e)), whenever these procedures would facilitate keeping the borrower on the farm or ranch." Id. § 2001(a)(1). In addition to avoiding losses to the government, loan adjustments under § 2001 are intended "to ensure that borrowers are able to continue farming or ranching operations." Id. § 2001(a)(2). Eligibility for the program is conditioned on, among other things, a net recovery to the government at least as large as the recovery that would result from a "foreclosure on the property securing the loan." Id. § 2001(b)(4). Subsection (e) provides in part:

(e) Shared appreciation arrangements.
(1) In general.
   As a condition of restructuring a loan in accordance with this section, the borrower of the loan may be required to enter into a shared

-7-

appreciation arrangement that requires the repayment of amounts written off or set aside.

(2) Terms.

Shared appreciation agreements shall have a term not to exceed 10 years, and shall provide for recapture based on the difference between the appraised values of the real security property at the time of restructuring and at the time of recapture.

(3) Percentage of recapture.

The amount of the appreciation to be recaptured by the Secretary shall be 75 percent of the appreciation in the value of such real security property if the recapture occurs within 4 years of the restructuring, and 50 percent if the recapture occurs during the remainder of the term of the agreement.

(4) Time of recapture.

Recapture shall take place at the end of the term of the agreement, or sooner–

    (A) on the conveyance of the real security property;

    (B) on the repayment of the loans; or

    (C) if the borrower ceases farming operations.

7 U.S.C. § 2001(e)(1)-(4).

Appellants contend that no recapture is due under the Agreement if the expiration date is reached and none of the three triggering events listed in § 2001(e)(4)(A)-(C) has occurred.  We accord deference to an agency's interpretation of ambiguous provisions in the statutes it is charged with administering.  Gunn v. USDA, 118 F.3d 1233, 1236-38 (8th Cir. 1997) (citing Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837 (1984)).  Although we agree with the USDA's construction of the statute, on this point we find it unambiguous.  Subsection (e)(4) states that "[r]ecapture shall take place at the end of the term of the agreement."  Although Congress afforded the Secretary deference in determining whether to require the borrower to enter into a shared appreciation agreement, 7 U.S.C. § 2001(e)(1) (Agreement "may be required"), the terms governing recapture are mandatory, id. § 2001(e)(2)-(4) (Agreement "shall provide for recapture").  To the

extent that the Agreement is ambiguous or that representations made by the USDA county supervisors suggest that no recapture is due at the end of the term, the mandatory provisions of the statute control. See Israel v. USDA, 282 F.3d 521, 527-28 (7th Cir. 2002) (stating that § 2001 "strongly supported" construction of Agreement requiring recapture at the expiration date of the agreement); Parmenter v. FDIC, 925 F.2d 1088, 1095 (8th Cir. 1991) ("[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." (quoting FDIC v. Merrill, 332 U.S. 380, 384 (1947))).

Appellants also contend that the amount of any recapture due under the Agreement is limited to a value labeled the "Equity Recapture Account Amount" in Exhibit B, which was attached to the Agreement and a copy of which was given to the borrower. Again, however, § 2001(e)(3) unambiguously specifies the amount of recapture that is required. Seventy-five percent of the appreciated value of the property is due if recapture occurs within four years of the write-down, and fifty percent is due thereafter. 7 U.S.C. § 2001(e)(3). Nowhere in the Agreement or in Exhibit B is there any indication that recapture is limited to the Equity Recapture Account Amount. Rather, the Agreement is consistent with the requirements of § 2001. "[The Agreement] requires the repayment of amounts written off or set aside." Id. § 2001(e)(1). Read as a whole, § 2001(e) requires recapture of the amount written down, up to fifty percent (or seventy-five percent if triggered within four years) of the increased property value over the term of the agreement.

Appellants suggest that the Agreement's term "either the expiration date of this Agreement or . . .", which appears in both the paragraph specifying seventy-five percent appreciation and the paragraph specifying fifty percent appreciation, compels the "absurd" result that upon expiration of the agreement the USDA could require either fifty or seventy-five percent at its whim. Although the term of each Agreement in this suit was ten years, the maximum authorized by § 2001(e)(2), the term could

have been set at less than four years, which would trigger the seventy-five percent figure upon expiration.  Although we agree with appellants that the Agreement does not represent the pinnacle of the drafter's art, see Bukaske v. USDA, 193 F. Supp. 2d 1162, 1167 (D.S.D. 2002) ("[The Agreement] is poorly drafted."), its terms are reasonably plain and in any case may not be construed to conflict with the conditions Congress has placed on participation in this program.  We conclude that 7 U.S.C. § 2001 unambiguously requires recapture of fifty percent of the appreciated value of the property securing the loan upon the expiration date of the Agreement, where the expiration date occurs more than four years after the date of the agreement.  Because appellants' asserted construction of the Agreement is inconsistent with the requirements of § 2001, we find no error in the district court's dismissal of their claims.

We find appellants' remaining arguments to be without merit.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-