**Peter KALOS and Veron Kalos, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 08–631 C.**

United States Court of Federal Claims.

April 27, 2009.

Order Denying Motion to Amend
May 26, 2009.

Peter Kalos and Veron Kalos, Manassas, VA, pro se.

Sean Dunn, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

SWEENEY, Judge.

Before the court is defendant's motion to dismiss the above-captioned case pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). In their *pro se* amended complaint,[1] plaintiffs, owners of a construction company that entered into a renovation contract with defendant, contend that defendant accepted payment from a surety pursuant to a counterfeit Miller Act bond, causing plaintiffs to lose title to and possession of real property that secured the bond. Plaintiffs

---

1. *Pro se* complaints, " 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

seek compensation for the loss of their real property and for the purportedly improper payment received by defendant from the surety. However, the court is unable to provide plaintiffs with the relief they seek. Thus, for the reasons set forth below, the court grants defendant's motion.

## I. BACKGROUND[2]

Plaintiffs Peter and Veron Kalos are husband and wife who together own Brickwood Contractors, Inc. ("Brickwood"). Compl. ¶ 2; Am. Compl. ¶ 9; Ex. 4 at 1. On July 25, 2003, Brickwood entered into a $769,998 contract with the Federal Bureau of Prisons of the United States Department of Justice for the renovation of the water tank at the Federal Correctional Institution in Loretto, Pennsylvania. Am. Compl. ¶ 9; Ex. 4 at 1.

Pursuant to the Miller Act, plaintiffs, on Brickwood's behalf, sought to obtain the necessary payment and performance bonds for the contract. On August 11, 2003, plaintiffs agreed to allow "a licensed Maryland broker and insurance agent[ ] to file a $154,000 lien on their Virginia real property as consideration towards suretyship on behalf of" Brick-

wood.[3] Am. Compl. ¶ 10; *see also id.* ¶ 8 (noting that the property was owned by plaintiffs, and not Brickwood). The broker was an agent of Greenwich,[4] *id.* ¶ 50, a Delaware corporation headquartered in Stamford, Connecticut, Ex. 1 at 1, 3, 5–6. Subsequently, on September 17, 2003, Greenwich issued payment and performance bonds to Brickwood. *Id.;* Am. Compl. ¶ 11. Both the payment bond and the performance bond were marked as bond number 006438, carried a penal sum of $769,998, and were executed by Peter Kalos, president of Brickwood, and Michael E. Schendel, attorney-in-fact for Greenwich. Am. Compl. ¶ 11; Ex. 1 at 1, 4–5, 7; Ex. 4 at 1. Further, each bond identified Brickwood as the principal, Greenwich as the surety, and the United States as the obligee. Ex. 1 at 1, 5; Ex. 4 at 1. On October 14, 2003, the Federal Bureau of Prisons issued a notice to proceed on the project to Brickwood. Am. Compl. ¶¶ 13–14. The next day, "the Maryland broker filed a lien on real property owned by the Plaintiffs."[5] *Id.* ¶ 18.

According to plaintiffs, "[s]ometime around August of 2004, the Government made inqui-

**2.** The court derives the facts in this section from plaintiffs' complaint ("Compl."), plaintiffs' first amended complaint ("Am. Compl."), and the exhibits attached to the first amended complaint ("Ex."). In addition, the court derives facts from various public records, which the court accessed using Westlaw for the purpose of fully understanding plaintiffs' allegations concerning the entities and real property mentioned in their amended complaint. These additional facts were gleaned from real property transaction records, business locator records, a Fairfax County Circuit Court case docket, and the docket of a bankruptcy proceeding initiated by plaintiffs in the United States Bankruptcy Court for the Eastern District of Virginia on September 12, 2005, *In re Kalos,* No. 05–13505–RGM. *See* Fed.R.Evid. 201(b) (permitting the court to take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

**3.** Plaintiffs do not substantiate the amount of the "lien." According to real property transaction records accessed using Westlaw, on August 11, 2003, plaintiffs executed two indemnity deeds of trust with United States Surety Company, encumbering (1) plaintiffs' real property in Great Falls, Virginia ("Great Falls property") for $400,000 and (2) plaintiffs' real property in Manassas, Virginia ("Manassas property") for $700,000. United States Surety Company, ac-

cording to business locator records accessed on Westlaw, is located at 20 West Aylesbury Road, Timonium, Maryland 21093. The surety for the payment and performance bonds at issue in this case, Greenwich Insurance Company ("Greenwich"), shares this same address. *See* Ex. 1 at 1, 5. There is evidence that United States Surety Company acted as an agent for Greenwich. *See* Ex. 4 at 3 (containing the signature of the president of United States Surety Company "as agent for Greenwich ... pursuant to the Indemnity and Quota Share Reinsurance Agreements dated July 15, 1996 between Greenwich ... and United States Surety Company").

**4.** Although plaintiffs do not name the "Maryland broker and insurance agent" in their amended complaint, it appears that this individual is Michael E. Schendel, who executed the payment and performance bonds as the attorney-in-fact for Greenwich. *See* Ex. 1 at 1, 5; *see also id.* at 3, 6 (containing the Power of Attorney executed by Greenwich designating Mr. Schendel as Greenwich's attorney-in-fact).

**5.** According to real property transaction records accessed using Westlaw, the indemnity deed of trust for the Great Falls property was recorded on August 22, 2003, and the indemnity deed of trust for the Manassas property was recorded on October 17, 2003.

ries into the validity of" the payment and performance bonds.[6] *Id.* ¶ 19. Then, in September 2004, Greenwich's parent company, XL Reinsurance America, Inc. ("XL"), sold its surety reinsurance business to Endurance Reinsurance Corporation of America ("Endurance"). *Id.* ¶ 20; Ex. 2 at 1. Several employees of Greenwich/XL joined Endurance.[7] Am. Compl. ¶ 20; Ex. 1 at 3, 6; Ex. 2 at 1.

The following year, on September 15, 2005, the Federal Bureau of Prisons terminated its contract with Brickwood for default. Ex. 4 at 1. The Federal Bureau of Prisons simultaneously made a demand on Greenwich pursuant to the terms of the performance bond. *Id.* However, plaintiffs aver, on November 20, 2005, a Federal Bureau of Prisons employee, Mary Carney, informed them that the payment and performance bonds were "fake" and that "the Government was seeking to collect money from entities or individuals pretending to be" Greenwich.[8] Am. Compl. ¶¶ 22–23; *accord* Compl. ¶¶ 9–10. Plaintiffs also assert that Ms. Carney informed them that "no one could make a claim under an obligation of the fake" bonds. Am. Compl. ¶ 24; *accord* Compl. ¶ 10 ("The Federal Bureau of Prisons claimed [that] no party could make a claim against the Plaintiffs under the fake [bonds]."). Then, plaintiffs state, on May 23, 2006, another Federal Bureau of Prisons employee, Christopher Van Horne, informed them that Greenwich "confirmed [that] it did not execute" the bonds, that "there was no surety" on the bonds, and that "a Government Contracting Officer received a new bond for the contract...." Am. Compl. ¶¶ 25–27; *accord* Compl. ¶ 11.

Despite the alleged representations of Ms. Carney and Mr. Van Horne to plaintiffs, the Federal Bureau of Prisons worked with Greenwich "to resolve the Government's claim and the Surety's liabilities under the Performance Bond," eventually entering into a Settlement Agreement and Release ("settlement agreement"). Ex. 4 at 1. Pursuant to the settlement agreement, Greenwich was to pay the Federal Bureau of Prisons the full penal amount of the performance bond–$769,998–as full satisfaction of its obligations under the performance bond. *Id.* at 2. In addition, Greenwich and the Federal Bureau of Prisons agreed to release each other from any "liability, actions, causes of action, debts, claims and/or demands" relating to "Brickwood, the Contract, the Performance Bond and/or the Project." *Id.* At the same time, they expressly agreed to keep the payment bond in full force and effect and indicated that the terms of the settlement agreement did not preclude Brickwood or the Federal Bureau of Prisons from pursuing any claims against each other. *Id.; cf. id.* (noting that the parties to the settlement agreement did "not intend ... to create any third-party beneficiaries"). Richard E. Klein, president of United States Surety Company, as agent for Greenwich, executed the settlement agreement on September 6, 2007, and a Federal Bureau of Prisons contracting officer, Robert J. Kruskie, executed the settlement agreement on February 1, 2008. *Id.* at 3; Am. Compl. ¶¶ 32–34. On February 8, 2008, Greenwich remitted $769,998 to the Federal Bureau of Prisons. Am. Compl. ¶ 31. Plaintiffs allege that once Greenwich paid the Federal Bureau of Prisons, it then sought to recover those funds from plaintiffs by taking plaintiffs' real property, which had "an estimated value of $4,734,000." [9] *Id.* ¶¶ 54–55;

---

6.  Plaintiffs do not indicate to whom those inquiries were made or the results of these inquiries.

7.  Plaintiffs aver erroneously that these employees "signed the bond[s]" at issue in this case. *See* Am. Compl. ¶ 20. Rather, these employees either signed, witnessed, or appear on the Power of Attorney executed by Greenwich. *See* Ex. 1 at 3, 6.

8.  According to a June 13, 2008 facsimile transmission authored by Veron Kalos, "[t]he agent who sold [her] the bond paid the counterfeiter and not the insurance company who[se] name is

on the bond." Ex. 7. Ms. Kalos did not identify the counterfeiter.

9.  However, plaintiffs' allegation that the taking occurred after payment is contradicted by information contained in public records, which indicates that plaintiffs lost title to and possession of their real property years before Greenwich and the Federal Bureau of Prisons executed the settlement agreement in February 2008. First, real property transaction records accessed using Westlaw indicate that the Great Falls property was sold to a third party on February 21, 2006, and that the Manassas property was sold to a third party on August 8, 2006. These transac-

see also id. ¶¶ 61, 70 (contending that the property located in Great Falls, Virginia, was valued at $1,950,000, and that the property located in Manassas, Virginia, was valued at $2,784,000).

"On the advice of a bond and insurance expert," Veron Kalos, on an undisclosed date, contacted the United States Attorney's Office "in the district where the counterfeit bond was intended to be in full force and effect, to confirm [that] the Office of the United States Attorney authorized the Government to settle the counterfeiting of the United States of America." Id. ¶ 29. Specifically, Ms. Kalos communicated with Assistant United States Attorney John Valkovci in the Western District of Pennsylvania. See Ex. 5. According to plaintiffs, Mr. Valkovci "confirmed" with Ms. Carney on February 6, 2008, that the payment and performance bonds were "forger[ies]," and relayed this information to Ms. Kalos on February 15, 2008. Am. Compl. ¶¶ 30, 37. However, plaintiffs aver, Mr. Valkovci informed Ms. Kalos that the proper venue for any lawsuit would be the District of Maryland and that he would forward the documentation provided by Ms. Kalos to the United States Attorney's Office in that district. Id. ¶ 37; Ex. 5.

It appears that Mr. Valkovci did, in fact, forward the materials because on June 6, 2008, Assistant United States Attorney Joyce K. McDonald wrote a letter to Ms. Kalos indicating that the United States Attorney for the District of Maryland was "declining to open a criminal investigation of the surety bond" because "[t]he United States suffered no loss on the bond, and [Brickwood] knowingly guaranteed the bond." Ex. 6; accord Am. Compl. ¶ 38. In response to this letter, Ms. Kalos sent a facsimile transmission to Mr. Valkovci on June 13, 2008, indicating that the United States Attorneys in both districts "agree [that] the bond is counterfeit" and demanding that the counterfeiters be prosecuted.[10] Ex. 7; accord Am. Compl. ¶ 41.

Plaintiffs filed a complaint in this court on September 4, 2008. Subsequently, on December 19, 2008, they filed a first amended complaint, asserting two claims for relief. In their first claim for relief, plaintiffs allege taking in violation of the Fifth Amendment of the United States Constitution, contending that "[a]s a direct result of the actions of the Government, the Plaintiffs lost title to both of their real properties in Great Falls, Virgi-

tions occurred approximately two years and one-and-one-half years, respectively, before the execution of the settlement agreement.

Second, a motion and supporting documents filed in plaintiffs' September 2005 bankruptcy proceeding indicate that plaintiffs defaulted on their indemnity deeds of trust and security agreements with United States Surety Company well in advance of the execution of the settlement agreement. Specifically, in its motion for relief from the automatic stay, United States Surety Company asserted that due to plaintiffs' default on the indemnity deed of trust and security agreement for the Great Falls property, it scheduled a foreclosure sale of the property for April 27, 2005, approximately four-and-one-half months before the default termination of Brickwood's contract with the Federal Bureau of Prisons and almost three years prior to the execution of the settlement agreement. Am. Mot. Relief Automatic Stay & Prospective Relief Automatic Stay ¶ 6, In re Kalos, No. 05–13505–RGM (filed Dec. 2, 2005). Further, United States Surety Company noted, as reflected in the Fairfax County Circuit Court case docket available on Westlaw, that the only reason why the foreclosure sale did not occur on April 27, 2005, was that the Fairfax County Circuit Court granted plaintiffs'

request for a temporary restraining order to enjoin the sale. Id. ¶¶ 7–8. The Circuit Court ultimately denied plaintiffs' request for an injunction and lifted the temporary restraining order on June 13, 2005. Id. ¶ 9, Attach. C (containing a copy of the court order). With respect to the Manassas property, United States Surety Company asserted that plaintiffs defaulted on the indemnity deed of trust and security agreement at some time before it filed its motion on December 2, 2005, which was more than two years prior to the execution of the settlement agreement. Id. ¶ 27.

10. Although plaintiffs characterize the payment and performance bonds as "counterfeit," there is no evidence in the record supporting this characterization. Indeed, plaintiffs allege that two Federal Bureau of Prisons employees—Ms. Carney and Mr. Van Horne—informed them that the bonds were counterfeit, Am. Compl. ¶¶ 22–27; Compl. ¶¶ 9–11, but fail to supply supporting affidavits or correspondence. Further, plaintiffs allege that the United States Attorneys in the Western District of Pennsylvania and the District of Maryland agreed that the bonds were counterfeit, Am. Compl. ¶ 41; Ex. 7, but fail to provide any supporting correspondence from either United States Attorney's Office.

nia and in Manassas, Virginia."[11] Am. Compl. ¶ 65; *see also id.* ¶¶ 64 ("The Government knew [that] the Plaintiffs allowed the Maryland broker to place a lien on their Virginia real property as consideration towards suretyship on behalf of the company owned by the Plaintiffs."), 69 ("Plaintiffs' real property was appropriated through the Government's authorized contract actions . . . ."). Plaintiffs assert that the Federal Bureau of Prisons' execution of the settlement agreement with Greenwich cut off any opportunity for them to receive compensation for the loss of their properties from "the Maryland broker" or other individuals "responsible [for] forging" the performance bond, either via a civil action or a criminal prosecution. *Id.* ¶¶ 66–68.

In their second claim for relief, plaintiffs allege that the Federal Bureau of Prisons illegally exacted $769,998–the amount paid by Greenwich pursuant to the settlement agreement.[12] *Id.* ¶¶ 77–78. Specifically, they assert that the Federal Bureau of Prisons "imposed . . . financial liability on the Plaintiffs without statutory or regulatory authority to do so" by executing a settlement agreement with Greenwich that "compell[ed] payment" to the Federal Bureau of Prisons "in exchange for settlement" of a "counterfeiting crime. . . ." *Id.* ¶ 73; *see also id.* ¶¶ 42–44 (contending that the Federal Bureau of Prisons could not take any action with respect to the payment and performance bonds because the bonds were counterfeit), 77 (contending that 18 U.S.C. § 494 prohibits the United States from receiving money based on a counterfeit bond, as plaintiffs allege here). Plaintiffs also contend that by "agreeing to establish and leave in full force and effect" the payment bond, defendant has violated 31

C.F.R. § 223.13(d), "where only the contract price is applied as a real surety's liability under" the payment and performance bonds.[13] *Id.* ¶ 74.

In their prayer for relief, plaintiffs request just compensation in the amount of $4,734,000; damages for the alleged illegal exaction; any other damages to which they are entitled; interest; costs; attorney's fees; remand of "the matter of the bond to the Government's disbursement officer with direction [that] the Government's disbursing officer deliver the original" payment and performance bonds to the United States Secret Service pursuant to 31 C.F.R. § 403.1; and remand of "any matters in this Complaint to any administrative [body], executive body, or official, with such direction as the Court may deem proper and just." *Id.* ¶¶ (a)-(h).

Defendant filed the instant motion to dismiss on November 4, 2008, and the parties concluded briefing on January 5, 2009. The court deems oral argument unnecessary.

## II. DISCUSSION

### A. RCFC 12(b)(1) and RCFC 12(b)(6) Motion to Dismiss

In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in plaintiffs' favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995). With respect to RCFC 12(b)(1), plaintiffs bear the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d

---

11. Plaintiffs style their first claim for relief as "Taking and Incidental Declaratory Judgment and Injunctive Relief." However, the only remedy requested by plaintiffs that could be construed as declaratory or injunctive relief is their request that "the matter of the forged bond be remanded to the Government's disbursing officer," Am. Compl. ¶ 71, which the court addresses below, *see infra* note 18. Other than remand, plaintiffs do not seek equitable relief. *See* Am. Compl. ¶¶ (a)-(h). Thus, the court concludes that plaintiffs have abandoned the claims for declaratory and injunctive relief that they raised in their original complaint. *See* Compl. ¶¶ 29–38 (de-

scribing requests for a preliminary injunction, declaratory relief, and a permanent injunction).

12. Although plaintiffs do not indicate from whom the money was illegally exacted, the court, giving due weight to plaintiffs' *pro se* status and construing plaintiffs' allegations in their favor, concludes that plaintiffs are alleging that the money was illegally exacted from them, even though the money was actually paid by Greenwich.

13. As explained below, plaintiffs misunderstand 31 C.F.R. § 223.13(d).

746, 748 (Fed.Cir.1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction. *Land v. Dollar*, 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds*, 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

If the court finds that it possesses jurisdiction to entertain one or all of plaintiffs' claims, it still must dismiss those claims that fail to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). The United States Supreme Court ("Supreme Court") has clarified the degree of specificity with which a plaintiff must plead facts sufficient to survive such a motion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), stating that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 555, 127 S.Ct. 1955 (citation omitted). The Supreme Court explained that although a complaint need not contain "detailed factual allegations," the "factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." [14] *Id.* at 563, 127 S.Ct. 1955. Indeed, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### B. Subject Matter Jurisdiction

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Without jurisdiction the court cannot proceed at all in any cause.

Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court *sua sponte* may challenge the court's subject matter jurisdiction at any time. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

The Tucker Act, the principal statute governing the jurisdiction of this court, provides that the Court of Federal Claims has jurisdiction over claims against the United States that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2006). The Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir. 1994) (en banc).

### C. Plaintiffs Have Failed to State a Fifth Amendment Takings Claim Upon Which Relief Can Be Granted

▆▆▆ Plaintiffs' first claim for relief asserts a taking in violation of the Fifth Amendment. The Fifth Amendment prohibits the federal government from taking pri-

---

14. In so holding, the Supreme Court determined that the "no set of facts" language set forth in *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), "has earned its retirement," *Bell Atl. Corp.*, 550 U.S. at 563, 127 S.Ct. 1955.

vate property for public use without paying just compensation. U.S. Const. amend. V. The Court of Federal Claims possesses jurisdiction to entertain Fifth Amendment takings claims against the United States. *See Morris v. United States*, 392 F.3d 1372, 1375 (Fed.Cir.2004) ("Absent an express statutory grant of jurisdiction to the contrary, the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000."); *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987) (noting that "the 'just compensation' required by the Fifth Amendment has long been recognized to confer upon property owners whose property has been taken for public use the right to recover money damages from the government"). However, Tucker Act jurisdiction over Fifth Amendment takings claims is premised on the requirement that the government action was legitimate. *Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 126–27 & n. 16, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed.Cir. 1993). Here, plaintiffs allege both that their "real property was appropriated through the Government's *authorized* contract actions," Am. Compl. ¶ 69 (emphasis added), and that the Federal Bureau of Prisons could not take any action with respect to the performance bond because the bond was counterfeit, *id.* ¶¶ 42–44. Despite these apparently contradictory allegations, the court, giving due weight to plaintiffs' *pro se* status and construing plaintiffs' allegations in their favor, concludes that plaintiffs have alleged that the Federal Bureau of Prisons acted legitimately.

To establish that a Fifth Amendment taking has occurred, plaintiffs must show that they possess a valid property interest and that the government's action " 'amounts to a compensable taking of that property interest.' " *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212–13 (Fed. Cir.2005) (quoting *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir.2004)). The government action can take two forms: (1) "the government's physical invasion or appropriation of private property" and (2) "government regulations that unduly burden private property interests." *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1378 (Fed.Cir.2008) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014–15, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (physical taking); *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (regulatory taking)).

The central basis for plaintiffs' Fifth Amendment takings claim is that the settlement agreement executed by the Federal Bureau of Prisons and Greenwich on February 1, 2008, resulted in an uncompensated taking of their Great Falls and Manassas properties.[15] *See* Am. Compl. ¶¶ 54–55. Thus, plaintiffs must first establish that they possessed a valid property interest at the in those two properties on February 1, 2008. *See Air Pegasus of D.C., Inc.*, 424 F.3d at 1212. Although plaintiffs allege that they "were jointly the sole and only owners of the real property taken," Am. Compl. ¶ 1, they do not make any allegations, or proffer any evidence, concerning when they owned the real property at issue.[16] Nevertheless, de-

---

**15.** In their amended complaint, plaintiffs imply that certain other events may constitute a Fifth Amendment taking. For example, plaintiffs contend that "[t]he Government knew [that] the Plaintiffs allowed the Maryland broker to place a lien on their Virginia real property as consideration towards suretyship on behalf of the company owned by the Plaintiffs." Am. Compl. ¶ 64. In addition, plaintiffs assert that Ms. Carney informed them that the bonds were counterfeit on November 20, 2005, and that Mr. Van Horne informed them on May 23, 2006, that the Federal Bureau of Prisons had received a replacement bond. *See* Opp'n Def.'s Mot. Dismiss ¶ 8. Indeed, based upon the entirety of plaintiffs' allegations, it appears that plaintiffs are alleging that the Federal Bureau of Prisons condoned and sanctioned a fraud (*i.e.*, making a payment pursuant

to the allegedly counterfeit performance bond). *See, e.g.,* Am. Compl. ¶¶ 64, 66, 69. However, mere knowledge of a fact, statements about a fact, or receipt of a document do not constitute a physical invasion or a regulatory action. *See Huntleigh USA Corp.*, 525 F.3d at 1378. Thus, to the extent that plaintiffs allege that the Federal Bureau of Prisons' knowledge, statements, or receipt of a document provides the basis for a Fifth Amendment taking, the court rejects that contention.

**16.** However, as noted above, public records reveal that plaintiffs lost title to and possession of their real property in foreclosure actions years before Greenwich and the Federal Bureau of Prisons executed their settlement agreement.

fendant does not challenge whether plaintiffs possessed a valid property interest in the two real properties. *See* Def.'s Mot. Dismiss 6–7. Accordingly, plaintiffs' allegation suffices to establish a valid property interest for the purpose of considering defendant's motion to dismiss.

However, assuming that plaintiffs possessed valid property rights in the Great Falls and Manassas properties at the time of the purported taking, plaintiffs have not established, and cannot establish, the existence of a government action that constituted a taking of those property rights. *See Air Pegasus of D.C., Inc.*, 424 F.3d at 1213. Plaintiffs contend that the taking was effectuated when the Federal Bureau of Prisons accepted payment pursuant to a performance bond that it knew was counterfeit and with the knowledge that the performance bond was secured by plaintiffs' two properties. *See generally* Am. Compl. Even accepting plaintiffs' allegations as true, as this court must when considering a motion to dismiss, such an action cannot constitute a Fifth Amendment taking as recognized by the Supreme Court. Plaintiffs do not allege that the Federal Bureau of Prisons or any other government entity or representative physically invaded or appropriated their real property, nor do plaintiffs allege that the Federal Bureau of Prisons or any other government entity took any regulatory action that affect-ed their real property. Plaintiffs cannot make these allegations because the federal government did not take plaintiffs' real property. Rather, plaintiffs' real property was "taken" by a private party—either United States Surety Company, Greenwich, the "Maryland broker," or the third-party purchasers—as a result of the termination of Brickwood's contract for default and the consequent calling of the performance bond by the Federal Bureau of Prisons. In other words, plaintiffs would not have lost their real property had the company they owned not defaulted on its contract. Thus, in sum, plaintiffs have failed to state a claim upon which this court can grant relief.

## D. The Court Lacks Jurisdiction Over Plaintiffs' Illegal Exaction Claim

■ Plaintiffs' second claim for relief asserts an illegal exaction. "[A]n illegal exaction claim may be maintained when 'the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that 'was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572–73 (Fed.Cir.1996) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967)). "The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the

---

Real property transaction records indicate that the Great Falls and Manassas properties were sold to third parties more than one-and-one-half years before the execution of the settlement agreement. And, bankruptcy proceeding filings indicate that plaintiffs defaulted on their indemnity deeds of trust and security agreements with United States Surety Company at least two years prior to the execution of the settlement agreement. Thus, based upon public records that plaintiffs failed to disclose, plaintiffs cannot establish that they possessed a valid property interest in the two properties at the time of the February 1, 2008 settlement agreement. Accordingly, it would appear that plaintiffs lack standing to maintain a Fifth Amendment takings claim.

The court is compelled to note here that plaintiffs' failure to include this highly relevant, readily available information in their amended complaint demonstrates a clear lack of candor and constitutes a violation of RCFC 11. RCFC 11(b) provides, in relevant part:

*Representations to the Court.* By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

. . . .

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

Here, plaintiffs allege that their real property was taken in violation of the Fifth Amendment as a result of the Federal Bureau of Prisons' execution of the settlement agreement with Greenwich. *See* Am. Compl. ¶¶ 54–55. Given that plaintiffs lost title to and possession of their real property years before the execution of the settlement agreement, plaintiffs' allegation that the settlement agreement preceded the taking cannot have any evidentiary support.

exaction is based on an asserted statutory power." *Id.* at 1573 (citing *Eastport S.S. Corp.*, 372 F.2d at 1007–08). Moreover, to create a basis for jurisdiction in this court, "the statute or provision causing the exaction" must provide, "either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Norman v. United States*, 429 F.3d 1081, 1095 (Fed.Cir.2005) (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed.Cir.2000)).

Here, plaintiffs claim that the Federal Bureau of Prisons "has misinterpreted and misapplied its statutory and regulatory contracting authority relating to the prosecution and settlement of a counterfeiting crime by compelling a payment to the United States Department of Justice in exchange for the settlement of a crime...." Am. Compl. ¶ 73. According to plaintiffs, this purported "settlement," which was memorialized in the February 1, 2008 settlement agreement between the Federal Bureau of Prisons and Greenwich, resulted in the illegal exaction of $769,998. *Id.* ¶¶ 77–78. To establish jurisdiction in this court, plaintiffs must establish that the $769,998 was exacted pursuant to the authority of a particular constitutional

provision, statute, or regulation. *See Aerolineas Argentinas*, 77 F.3d at 1573. Plaintiffs have not cited a particular constitutional provision in support of their illegal exaction claim. The only statute cited by plaintiffs is 18 U.S.C. § 494, a criminal statute describing punishments related to the counterfeiting of contractors' bonds. However, there is no indication that defendant obtained the $769,998 pursuant to 18 U.S.C. § 494.[17] Moreover, this court "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code...."[18] *Joshua v. United States*, 17 F.3d 378, 379 (Fed.Cir.1994). Plaintiffs also cite 31 C.F.R. § 223.13(d), which addresses what amount of a contract bond is applied to a surety's underwriting limitation.[19] In particular, regulations provide that a surety may not underwrite bonds in an amount greater than ten percent of the surety's paid-up capital and surplus. 31 C.F.R. § 223.10 (2008). When "contract bonds" are "given in excess of the amount of the contract," only "the amount of the contract" will be applied against the surety's underwriting limitation. *Id.* § 223.13(d). Thus, given the express language and purpose of 31 C.F.R. § 223.13(d), the Federal Bureau of Prisons did not, and could not,

---

17. Plaintiffs also contend that 18 U.S.C. § 494 interacts with section 2.101 of the Federal Acquisition Regulation to create an illegal exaction. *See* Am. Compl. ¶ 77. Section 2.101 defines "unallowable cost" as including a "cost that, under the provisions of any pertinent law, ... cannot be included in ... settlements under a Government contract to which it is allocable." It does not, however, contain any language that would cause an exaction. Accordingly, it is inapposite here.

18. To the extent that plaintiffs seek relief against the alleged counterfeiters directly, the proper venue for that action is either federal district court or state court. The United States is the only proper defendant in the Court of Federal Claims. *See* 28 U.S.C. § 1498(a)(1) (providing that the Court of Federal Claims has jurisdiction over claims against the United States); RCFC 10(a) (requiring that the United States be designated as the defendant in the Court of Federal Claims); *Sherwood*, 312 U.S. at 588, 61 S.Ct. 767 (concluding that jurisdiction in the Court of Federal Claims "is confined to the rendition of money judgments in suits brought for that relief against the United States, and if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court" (citations omitted)); *Ste-*

*phenson v. United States*, 58 Fed.Cl. 186, 190 (2003) ("[T]he only proper defendant for any matter before this court is the United States, not its officers, nor any other individual."); *Nat'l City Bank of Evansville v. United States*, 143 Ct.Cl. 154, 163 F.Supp. 846, 852 (1958) ("It is well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained." (footnotes omitted)). Moreover, because the court lacks jurisdiction over criminal matters, the court cannot remand a claim concerning the purportedly counterfeit bonds to an "administrative or executive body or official...." 28 U.S.C. § 1491(a)(2) (noting that the Court of Federal Claims may only remand matters within its jurisdiction).

19. Plaintiffs assert that 31 C.F.R. § 223.13(d) stands for the proposition that a Miller Act surety is liable to the United States only for the contract price, even if the payment and performance bonds, summed together, bear an amount in excess of the contract price. *See* Am. Compl. ¶ 74. As explained below, plaintiffs' interpretation is not borne out by the plain language of the regulation.

obtain the $769,998 pursuant to 31 C.F.R. § 223.13(d).

In sum, plaintiffs have not cited any constitutional, statutory, or regulatory power that would provide a basis for their illegal exaction claim. Rather, their claim relies exclusively on a contract to which they are not a party—the settlement agreement. *See* Am. Compl. ¶¶ 73–74, 77. That contract, however, cannot, pursuant to established precedent, result in an illegal exaction. Moreover, the direct cause of Greenwich's $769,998 payment to the Federal Bureau of Prisons is the termination of Brickwood's contract for default and the resultant calling of the performance bond by the Federal Bureau of Prisons. As such, it was the actions of Brickwood, and not the Federal Bureau of Prisons, that caused the exaction of $769,998. Accordingly, this court lacks jurisdiction to entertain plaintiffs' illegal exaction claim.

### E. To the Extent That Plaintiffs Have Asserted Contract Claims in Their Amended Complaint, This Court Lacks Jurisdiction Over Those Claims

Although plaintiffs do not expressly raise a contract claim in their amended complaint, the court, giving due weight to plaintiffs' *pro se* status and construing plaintiffs' allegations in their favor, deems it appropriate to address any contract claims that might arise from plaintiffs' allegations.

As a general proposition, for the court to have jurisdiction over a claim based upon an express or implied contract, there must be privity of contract between the plaintiff and the United States. *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed.Cir.1998). However, there are several exceptions to this general rule. *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed.Cir. 1999). These exceptions include suits by intended third-party beneficiaries, suits by subcontractors "by means of a pass-through suit when the prime contractor is liable to the subcontractor for the subcontractor's damages," and suits by government contract sureties "for funds improperly disbursed to a prime contractor." *Id.; see also Ins. Co. of the W. v. United States*, 243 F.3d 1367, 1373–74 (Fed.Cir.2001) (holding, in a breach of contract action brought by a government contract surety under the Tucker Act, that the Tucker Act "contains an unequivocal expression waiving sovereign immunity as to claims, not particular claimants"). "[T]he common thread that unites these exceptions is that the party standing outside of privity by contractual obligation stands in the shoes of a party within privity." *First Hartford Corp. Pension Plan & Trust*, 194 F.3d at 1289.

In the instant case, plaintiffs have not alleged that they—as opposed to the company they own, Brickwood—have entered into any contracts with the United States. In fact, they address only four contracts in their amended complaint, and they were parties to none of them: (1) the contract between Brickwood and the Federal Bureau of Prisons, Am. Compl. ¶ 9; (2) the payment and performance bonds executed by Brickwood and Greenwich, Ex. 1; and (3) the settlement agreement executed by the Federal Bureau of Prisons and Greenwich, Ex. 4. Thus, plaintiffs lack privity with the United States. Moreover, plaintiffs have not established that they are, or could be, third-party beneficiaries, subcontractors, or sureties with respect to any of these contracts. Thus, plaintiffs do not fall within any of the recognized exceptions to the privity rule. Accordingly, to the extent that plaintiffs' amended complaint describes a contract claim, that claim must be dismissed for lack of jurisdiction.

### III. CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's motion to dismiss. Plaintiffs' first claim for relief is **DISMISSED WITH PREJUDICE** pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs' second claim for relief is **DISMISSED** pursuant to RCFC 12(b)(1) for lack of jurisdiction. **COSTS TO DEFENDANT.** The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

### *ORDER*

On May 7, 2009, plaintiffs in the above-captioned case filed a Motion to Alter or

Amend Judgment and Opportunity to Be Heard on Judicial Notice pursuant to Rule 59(e) of the Rules of the United States Court of Federal Claims ("RCFC") and Rule 201(e) of the Federal Rules of Evidence, objecting to several aspects of the court's April 27, 2009 Opinion and Order dismissing their amended complaint. Because the court finds that plaintiffs' contentions lack merit, it denies their motion.[1]

■ A motion to alter or amend judgment under RCFC 59(e) "seeks a revision which disturbs or revises legal rights and obligations that were settled by the previous judgment." *Maxus Energy Corp. & Subsidiaries v. United States*, 31 F.3d 1135, 1139 (Fed.Cir.1994). There are four recognized grounds for granting an RCFC 59(e) motion: (1) "[t]o take account of an intervening change in controlling law"; (2) "[t]o take account of newly discovered evidence"; (3) "[t]o correct clear legal error"; and (4) "[t]o prevent manifest injustice." 12 James Wm. Moore et al., *Moore's Federal Practice* § 59.30[5][a][i] (3d ed.2008). Although plaintiffs do not expressly indicate which of the four grounds they are invoking, the court construes plaintiffs' motion as asserting "clear legal error." The court finds no such error, and makes the following general points:

(1) Plaintiffs contend that it was improper for the court to take judicial notice of certain facts contained within the public record, and request an opportunity to be heard on the matter. *See* Fed.R.Evid. 201(e) ("A party is entitled upon a timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed."). Plaintiffs' motion constitutes its opportunity to be heard. However, plaintiffs have not persuaded the court that its taking of judicial notice was improper. First, as the court explained in its decision, it took judicial notice of real property transaction records, business locator records, and two case dockets "for the purpose of fully understanding plaintiffs' allegations concerning the entities and real property mentioned in their amended complaint." *Kalos v. United States*, No. 08–631C, 2009 WL 1164560, at *1 n. 2 (Fed.Cl. Apr.27, 2009). Such reference to public records is appropriate when considering a motion to dismiss. *See, e.g., Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 273 n. 11 (3d Cir.2007) ("Courts ruling on Rule 12(b)(6) motions may take judicial notice of public records."); *Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir.2006) ("[D]ocket sheets are public records of which the court could take judicial notice."); *Wyser–Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir.2005) ("In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice."); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir.2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."); *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 n. 14 (5th Cir.1997) ("The Court may take judicial notice of the contents of public records on a Rule 12(b)(6) motion."). Moreover, the court did not rely upon the facts from the public records in rendering its decision. *See Kalos*, 2009 WL 1164560, at *6 & n. 16 (finding, in disregard of the contents of the public records, that plaintiffs alleged a valid property interest).

(2) Plaintiffs contend that the court made "clearly erroneous and insufficient findings of facts and evidence . . . ." However, the court did not make any findings of fact in its decision, and is in fact prohibited from doing so when considering a motion to dismiss pursuant to RCFC 12(b)(6).[2] *See, e.g., Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007) ("[A] ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not

---

**1.** In such circumstances, the court need not obtain a response to the motion from defendant. *See* RCFC 59(b)(3).

**2.** The court may make jurisdictional fact findings when ruling on a motion to dismiss pursuant to RCFC 12(b)(1). However, the only jurisdictional ruling rendered by the court was that plaintiffs failed to cite "any constitutional, statutory, or regulatory power that would provide a basis for their illegal exaction claim." *Kalos*, 2009 WL 1164560, at *8. The jurisdictional issue was whether, regardless of the facts alleged, the statutes and regulations cited by plaintiffs could pro-

242

an occasion for the court to make findings of fact."); *United States v. LSL Biotechs.,* 379 F.3d 672, 700 (9th Cir.2004) ("Moreover, the court may not make fact findings of a controverted matter when ruling on a Rule 12(b)(6) motion."). Rather, because a motion to dismiss tests the sufficiency of a complaint, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (noting that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... [the f]actual allegations must be enough to raise a right of relief above the speculative level"), and not the accuracy of the pleaded facts, the court merely recited plaintiffs' factual allegations, and assumed they were true, *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). The court was very clear on this point. *See Kalos,* 2009 WL 1164560, at \*4 n. 12 (assuming that plaintiffs alleged "that the money was illegally exacted from them"), \*6 (assuming that plaintiffs "alleged that the Federal Bureau of Prisons acted legitimately"), \*7 (assuming "that plaintiffs possessed valid property rights in the Great Falls and Manassas properties at the time of the purported taking"). To reiterate: for the purposes of defendant's motion to dismiss, the court assumed plaintiffs' allegations were true.

(3) The court relied only upon plaintiffs' allegations—as set forth in their amended complaint—in rendering its decision. The factual "errors" asserted by plaintiffs do not alter those allegations. Thus, consideration of those "errors" would not lead the court to reach a result different than that contained within its April 27, 2009 Opinion and Order.

Accordingly, plaintiffs' RCFC 59(e) motion is **DENIED**.

**IT IS SO ORDERED.**

vide a basis for their illegal exaction claim. The court was not required to find any facts to reach